Steve C. **PERSON,** Appellant–
Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A02–0106–CR–410.

Court of Appeals of Indiana.

March 12, 2002.

---

Ann Sutton, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott A. Kreider, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Steven Person ("Person") appeals his conviction for unlawful possession of a fire-

arm by a serious violent felon as a class B felony.

We affirm.

### ISSUES

1. Whether the trial court erroneously denied Person's motion to suppress.
2. Whether the trial court erroneously denied Person's motion for a bifurcated trial.
3. Whether there was sufficient evidence to sustain Person's conviction.
4. Whether Person's sentence is unconstitutional.

### FACTS

The facts most favorable to the judgment reveal that on March 31, 2000, Officer Chris Lawrence ("Officer Lawrence") of the Indianapolis Police Department was patrolling near 1121 North Rural, a home where a narcotics search warrant had been served a few days earlier. Officer Lawrence observed two men, Tona Jones ("Jones") and Tommy Jackson ("Jackson"), standing on the sidewalk in front of 1121 North Rural engaged in a conversation with the driver of a parked car; Jackson had been arrested during the execution of the search warrant. Officer Lawrence observed Jackson bend over to talk to the driver, appearing to hand him something. Jones then appeared to inform Jackson of Officer Lawrence's approach and the driver of the car left "in an abrupt manner." (Tr. 46).

As Officer Lawrence parked his car in front of 1121 North Rural, Jones and Jackson began to walk away. Officer Lawrence told them to stop, but they continued walking away. At that point, Person, who was sitting on the front porch wearing a distinctive "orange and yellow shirt," looked at Officer Lawrence and "ran across the porch." (Tr. 47). Officer Lawrence "told all three of them to stop." (Tr. 47). Jones and Jackson "stopped, and [Person] continued to run into the house." (Tr. 47).

Officer Lawrence requested assistance and Officers Robert Hipple ("Officer Hipple") and Craig McCarett ("Officer McCarett") quickly arrived at the scene. With a description of Person, Officer Hipple began to search for Person. A young man behind the house informed him where Person had gone. Officer Hipple then went to a house located at 1135 North Rural where the owner, Andrew Smith Sr. ("Smith"), was sitting on the porch. After receiving permission to enter, Officer Lawrence "walked into the living room area" and found Person wearing a white T-shirt and blue jeans, sweating and panting "as if [he had] been running." (Tr. 91). Person was standing still with his hands behind his back. Officer Lawrence told him to show his hands, but he backed down a hallway towards a bedroom, went inside, and closed the door.

Officers Lawrence and McCarett soon arrived and Person subsequently came out of the bedroom. Officer Lawrence identified Person as the man who fled, and a check of his identification revealed an outstanding warrant for driving while suspended. The officers went into the bedroom and saw an orange and yellow shirt laying on top of a pile of clothes next to a .25 caliber Titan handgun. Officer McCarett took photographs and recovered the handgun as evidence. On April 3, 2000, Person was charged with unlawful possession of a firearm by a serious violent felon.

On October 31, 2000, Person filed a motion to suppress the handgun. At the hearing held on January 4, 2001, Person contended that Officer Lawrence did not have reasonable suspicion of criminal activity to justify detaining him. Therefore, he argued, the handgun should be suppressed

as fruit of an illegal search. Officer Lawrence testified that when he observed Jones and Jackson interacting with the driver of the car, he believed that narcotics were being exchanged. Further, Jackson had been arrested a few days earlier when a narcotics search warrant was executed at 1121 North Rural, a home that was the subject of numerous complaints about drug activity. Concerning Person's flight from the porch, Officer Lawrence testified that he believed Person was possibly involved in the suspected narcotics activity. He stated that "it's been my training and experience that during street level narcotics dealings you'll have usually a lookout, someone who runs the narcotics, and then somebody who is holding the money and a gun." (Tr. 71). In addition, Officer Hipple stated that he entered 1135 North Rural only after receiving permission to enter from Smith. Person testified that he walked away because he knew there was an outstanding warrant for his arrest.

After hearing evidence, the trial court took the matter under advisement. On January 5, 2001, the trial court denied Person's motion to suppress. The trial court found that Officer Lawrence "presented specific articulate [sic] facts and inferences therefrom that raise a reasonable suspicion that [Person] might have been involved in criminal" activity. (Tr. 118). Further, the trial court found that Person did not have a reasonable expectation of privacy in the house at 1135 North Rural since he did not own or reside therein.

A jury trial was held on February 28, 2001. Prior to the jury being empaneled, Person orally moved for a bifurcated trial. Person argued that the jury would be less likely to consider whether he was in possession of a firearm if they were aware of his prior conviction for burglary. However, the trial court noted that bifurcation would be unworkable because it is not unlawful to possess a firearm per se, therefore, no crime would be before the jury. Person's motion was denied; he subsequently stipulated that he had a prior conviction for burglary as a class B felony.

After hearing the evidence, the jury convicted Person of unlawful possession of a firearm by a serious violent felon. On May 4, 2001, Person's sentencing hearing was held. The trial court found as aggravators (1) Person's five prior felony convictions; (2) the fact that he committed another crime while on bond; and (3) that he is in need of rehabilitative treatment best provided in a penal facility. The trial court also found as a mitigator that his imprisonment would create a hardship on his family, but that it was outweighed by the aggravating circumstances. Person was sentenced to a fifteen-year term of imprisonment to be executed in its entirety.

### DECISION

#### 1. Motion to Suppress

Person argues that the trial court erroneously denied his motion to suppress the handgun. Specifically, he argues that Officer Lawrence did not have reasonable suspicion under the Fourth Amendment of the United States Constitution or Article I, Section 11 of the Indiana Constitution to detain him.

When we review the denial of a motion to suppress evidence,

> [w]e review the record for substantial evidence of probative value to support the trial court's ruling. We do not reweigh the evidence. We resolve conflicting evidence in favor of the trial court and consider any substantial uncontroverted evidence. If the basis for the ruling on a motion to suppress is unclear, we will uphold the trial court if a reasonable view of the evidence sup-

ports the trial court's decision. The credibility of witnesses is for the trial court to determine.

*Moore v. State,* 723 N.E.2d 442, 448 (Ind. Ct.App.2000) (quoting *Willsey v. State,* 698 N.E.2d 784, 789 (Ind.1998) (citations omitted)).

[1–3] The Fourth Amendment prohibits unreasonable searches and seizures. A search or seizure without prior judicial authorization is per se unreasonable unless it falls within one of the narrowly drawn exceptions. *Love v. State,* 741 N.E.2d 789 (Ind.Ct.App.2001). One exception is the investigatory stop as outlined in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An investigatory stop of a citizen by a police officer does not violate that citizen's constitutional rights where the police officer has a reasonable articulable suspicion of criminal activity. *Bogetti v. State,* 723 N.E.2d 876 (Ind.Ct.App.2000). Considering the totality of the circumstances, we determine what constitutes reasonable suspicion on a case-by-case basis. *Id.* However, reasonable suspicion must be an objective determination that is more than an inchoate and unparticularized suspicion or hunch, but it is less than proof of wrongdoing by a preponderance of the evidence. *Id.*

The United States Supreme Court has held that "an individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). However, an officer may consider it as a factor in determining whether the situation is sufficiently suspicious to warrant further investigation. *Id.* The Court also held that unprovoked flight upon noticing the police could be considered as suspicious behavior. *Id.* "Headlong flight wherever it occurs is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* at 125, 120 S.Ct. 673. Concerning an individual's reasonable expectation of privacy, the Court has also held that an overnight guest in a home has an expectation of privacy, but an individual merely present with the permission of the owner does not. *Minnesota v. Carter,* 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

In this case, the record reveals that Person was sitting on the porch of 1121 North Rural, a house where police had served a narcotics search warrant a few days earlier and about which police had received numerous complaints about narcotics activity. Jackson and Jones were engaged in a conversation with the driver of a car parked in front of the residence. Officer Lawrence recognized Jackson from his previous narcotics arrest at that house. When Jones saw Officer Lawrence approach in his police car, he appeared to inform Jackson of his presence. At that point, the driver immediately pulled away. When Officer Lawrence stopped in front of the house, Jackson and Jones began to walk away and continued to do so after being asked to stop. Unprovoked, Person looked at Officer Lawrence, who was in full uniform and driving a marked police car, and ran across the porch, through the house, and out the back door even after being told to stop by the officer. We note that Person testified that he walked away, but Officer Hipple testified that when he caught up with Person he was sweating and breathing heavily, "as if [he had] been running." (Tr. 91). In any event, this is an issue of witness credibility, and we will not reweigh their testimony. *Moore,* 723 N.E.2d 442. Under the totality of these circumstances, we find that Officer Lawrence had reasonable suspicion to believe

that Person may have been involved in criminal activity.

Concerning the seizure of the handgun, the record also shows that Person fled to a house located at 1135 North Rural where he was arrested and the handgun was seized. Officer Lawrence stated that he was given permission by Smith, the owner, to enter the house. However, there was no evidence that Person was an overnight guest, only that he was merely present with Smith's permission. *Minnesota*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373. As a result, we find that Person did not have a reasonable expectation of privacy under the Fourth Amendment.

■ Concerning Person's assertion that Article I, Section 11 of the Indiana Constitution prohibited the seizure of the handgun, we disagree. We have held that Article I, Section 11 provides a separate prohibition against unreasonable searches and seizures. *Mays v. State*, 719 N.E.2d 1263 (Ind.Ct.App.1999).

> While the Fourth Amendment inquiry focuses largely on the defendant's privacy expectation in the premises searched, cases interpreting our state constitution focus both on the premises searched and the defendant's interest in the property seized. Thus, to challenge evidence as the result of an unreasonable search or seizure under Article I, Section 11, a defendant must establish ownership, control, possession, or interest in either the premises searched or the property seized.

*Id.* at 1267 (citation omitted).

■ Here, Person did not present evidence that he had ownership, control, or possession of the house, and, for obvious reasons, he denied ownership of the handgun. As a result, Person does not have standing to challenge the search of the house or seizure of the handgun under the

Indiana Constitution. Therefore, the trial court did not err in denying Person's motion to suppress.

### 2. *Motion to Bifurcate*

Person argues that the trial court erroneously denied his motion for a bifurcated trial. Specifically, he argues that the jury was prejudiced against him because it heard evidence of his prior burglary conviction before it could determine whether he was in possession of the handgun. As a result, Person asserts that he was denied due process under the United States Constitution and due course of law under the Indiana Constitution.

Ind.Code § 35–47–4–5 prohibits a serious violent felon from knowingly or intentionally possessing a firearm. The term "serious violent felon" includes a person convicted of burglary as a class B felony. This court has recently decided the issue of whether a defendant is entitled to a bifurcated trial when charged under this statute. In *Spearman v. State*, 744 N.E.2d 545 (Ind.Ct.App.2001), *trans. denied*, the court held that it would often be impractical, if not impossible, to bifurcate proceedings when a defendant is charged with possession of a firearm as a serious violent felon. This statute creates a "very different situation from one in which the act itself is illegal without regard to the status of the offender, from one where the level of the illegal act is elevated based upon the offender's status, and from one where the punishment for the illegal act is enhanced based upon the offender's status." *Id.* at 548. Here, a jury could not convict a defendant because his or her status is an element of the crime. *Id.* "We understand that prejudice may arise when a jury is informed of a prior conviction under IC 35–47–4–5, but the focus cannot be placed solely on the question of the prejudicial effect of such evidence." *Id.* at

549. Instead, "the focus should be on whether the prejudice arising from evidence of prior crimes outweighs the probative value of such evidence." *Id.* Trial courts can limit the "prejudicial effect of evidence of a prior conviction by excluding evidence regarding the underlying facts of the prior felony and limiting prosecutorial references thereto." *Id.* at 550.

■ In this case, Person stipulated to his prior conviction for burglary and the State did not introduce evidence of the underlying facts of Person's prior conviction. Further, Person was not referred to as a "serious violent felon" during the trial. *See Spearman* (warning trial courts to be mindful of prejudice to defendant by repeated reference to a defendant as a "serious violent felon"). As a result, we find that the trial court did not err by denying Person's motion for a bifurcated trial.

### 3. *Sufficient Evidence*

Person argues that the State failed to present sufficient evidence to sustain his conviction. Specifically, he argues that there is insufficient evidence "to sustain the 'possession of a firearm' element of the offense." Appellant's Brief at 19.

"In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Scruggs v. State,* 737 N.E.2d 385, 386 (Ind.2000).

■ In order to convict Person, the State must prove beyond a reasonable doubt that Person knowingly or intentionally possessed a firearm after having been convicted of burglary as a class A or B felony. I.C. § 35–47–4–5.

A conviction for possession of contraband may rest upon proof of either actual or constructive possession. In order to prove constructive possession, the State must show that the defendant had both the intent to maintain dominion and control and the capability to maintain dominion and control over the contraband. To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband. This knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband. To establish the second element of constructive possession, the evidence must demonstrate the capability to exercise control over the item, that is, the ability to reduce the item to his personal possession or to otherwise direct its disposition or use. Control in this sense concerns the accused's power, by way of legal authority or in a practical sense.

*Conrad v. State,* 747 N.E.2d 575 (Ind.Ct. App.2001), *trans. denied.* (citations omitted).

■ In this case, the possession of the premises where the firearms were found was non-exclusive. As a result, we examine the evidence most favorable to the conviction to determine whether there were additional circumstances permitting a conclusion that Person constructively possessed the handgun. Officer Lawrence testified that Person fled wearing a distinctive orange and yellow shirt. When Officer Hipple arrived at 1135 North Rural a few minutes later, he observed Person facing him wearing a white T-shirt and blue jeans with his hands behind his back. Officer Hipple told Person to show his hands and come toward him. Instead,

Person refused to show his hands and backed down a hallway toward a bedroom, entered the room, and closed the door. Person later came out when Officers Lawrence and McCarett arrived, and they saw the orange and yellow shirt on top of a pile of clothes next to the handgun. We have held, "Contraband being in plain view and in close proximity to other items associated with the defendant are two 'additional circumstances' by which constructive possession of contraband may be proven where the defendant's control over the premises on which the contraband is found is non-exclusive." *Conrad,* 747 N.E.2d at 583 (quoting *Ladd v. State,* 710 N.E.2d 188, 190 (Ind.Ct.App.1999)). As a result, we find that there was sufficient evidence for the jury to infer that Person was in constructive possession of the handgun.

### 4. *Constitutional Claims*

Person argues that his fifteen-year sentence is cruel and unusual and disproportionate in violation of the United States and Indiana Constitutions. We disagree.

■ We have already held that "the classification of the serious violent felon statute as a Class B felony does not constitute cruel and unusual punishment or punishment disproportionate to the severity of the offense in violation of the Eighth Amendment to the United States Constitution and Article I, Section 16 of the Indiana Constitution." *Conrad,* 747 N.E.2d at 584. Likewise, Person's claim that the serious violent felon statute violates the principles of reformation under Article I, Section 18 of the Indiana Constitution fails because he does not challenge the penal system as a whole. *Id.*

Our General Assembly has determined that a person convicted of a class B felony shall be imprisoned for ten (10) years, to which not more than ten (10) years may be added for aggravating circumstances, and not more than four (4) years subtracted for mitigating circumstances. Ind.Code § 35–50–2–5. Here, the trial court properly weighed the aggravating and mitigating circumstances and found that a fifteen-year sentence was appropriate. We find that it is constitutional and within the sentencing range established under the law.

Affirmed.

SHARPNACK and BAILEY, JJ., concur.