**STATE of Indiana, Appellant–Plaintiff,**

v.

**Patrick LITCHFIELD and Susan May Litchfield, Appellees–Defendants.**

No. 50A03–0602–CR–58.

Court of Appeals of Indiana.

June 16, 2006.

Transfer Denied Aug. 31, 2006.

---

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Tom A. Black, June E. Bules, Plymouth, IN, Attorneys for Appellees.

## OPINION

KIRSCH, Chief Judge.

Following remand, the State appeals the trial court's grant of Patrick and Susan May Litchfield's motion to suppress evidence, which effectively precluded the Litchfields' prosecution for possession of

marijuana[1] as a Class D felony, and maintaining a common nuisance,[2] a Class D felony. The State raises the following issue: whether the trial court erred in finding that the State did not have an articulable individualized suspicion of criminal activity prior to seizing and searching the Litchfields' trash.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment are as follows. From 1999 through 2002, the Indiana State Police ("ISP"), as part of the federal Drug Enforcement Administration's ("DEA") Marijuana Eradication Program, regularly found shipping containers and/or catalogues from growing supply companies when searching marijuana-growing operations. Recognizing that the names of a few suppliers appeared repeatedly, the ISP compiled a list of those supplier names. By means of subpoena to the United Parcel Service ("UPS"), the DEA obtained a list of addresses where the target suppliers had sent shipments. Shipments sent by the growing supply company Worm's Way were among those subpoenaed.

In the summer of 2002, the DEA gave the UPS list of addresses to the ISP. Using that list as a starting point to their investigation of each property, the ISP: (1) made efforts to determine who lived at each address and, if possible, ran a criminal history on each resident; and (2) drove by some of the listed addresses in search of evidence of a marijuana growing operation, e.g., signs of excessive air conditioning or ventilation, and covered windows to conceal grow lights.

The Litchfields' address in rural Marshall County was included on the list because Worm's Way had sent them three shipments via UPS. Without any prior surveillance of the Litchfield property, and based only on evidence that the Litchfields had received Worm's Way shipments, ISP Troopers Daniel Ringer and Chad Larsh went to the Litchfields' address on July 5, 2002, and July 22, 2002. There, they found trash barrels in the same general area where the collection service normally picked up the trash and where the containers were routinely kept. The barrels were located on the Litchfields' property approximately fifteen to twenty-five feet from the edge of the pavement and approximately 175 feet from the nearest corner of the Litchfields' house.

On both occasions, the troopers entered onto the property and removed several garbage bags. A search of the Litchfields' trash revealed plant stems, seeds, and leaves that tested positive for marijuana. The bags seized on July 22 also contained burnt rolling papers and hemp rolling paper packaging. Based on this evidence, Trooper Ringer prepared and obtained a warrant to search the Litchfields' home. The ISP executed the warrant on July 24, and discovered fifty-one marijuana plants growing on the back deck of the Litchfields' home.

The Litchfields were charged with possession of marijuana and maintaining a common nuisance. The trial court denied their pretrial motion to suppress the evidence obtained from the searches of their garbage and the subsequent search of their home. The Litchfields brought an interlocutory appeal, and the Court of Appeals affirmed. Our Supreme Court granted transfer and, on March 24, 2005, remanded the case to the trial court for a

---

1. *See* IC 35–48–4–11.

2. *See* IC 35–48–4–13(b).

determination of whether the police had the required articulable individualized suspicion that the Litchfields were engaged in criminal activity. *Litchfield v. State*, 824 N.E.2d 356, 364 (Ind.2005).

After a hearing on remand, the trial court granted the Litchfields' motion to suppress, finding that their garbage was taken and searched without reasonable suspicion. On November 1, 2005, the State dismissed the charges against the Litchfields, and it now appeals.[3]

## DISCUSSION AND DECISION

■■■ On appeal from the grant of a motion to suppress, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *State v. Crabb*, 835 N.E.2d 1068, 1070 (Ind.Ct.App. 2005), *trans. denied* (2006). We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* This court neither reweighs the evidence nor judges the credibility of the witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.*

■■■ The State contends that the warrantless search of the Litchfields' trash was reasonable under Article I, Section 11 of the Indiana Constitution.[4] Our Supreme Court has held that the legality of a governmental search under the Indiana Constitution "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Crook*

*v. State*, 827 N.E.2d 643, 645 (Ind.Ct.App. 2005). The totality of the circumstances requires consideration of "both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.; see also Litchfield*, 824 N.E.2d at 360. The degree of intrusion is judged by the manner in which the trash is collected, i.e. it must be retrieved in substantially the same manner as the trash collector would use. *Edwards v. State*, 832 N.E.2d 1072, 1075 (Ind.Ct.App.2005). Evaluation of the basis upon which an officer selects a subject of a search, turns on whether the officer possesses " 'articulable individualized suspicion, essentially the same as is required for a "Terry stop" of an automobile.' " *Id.* (quoting *Litchfield*, 824 N.E.2d at 364).

In the first appeal of this case, our Supreme Court held that, as to the degree of intrusion on the Litchfields, "the police acted reasonably by quickly and quietly retrieving the trash from the place it was ordinarily collected without creating undue embarrassment or indignity." *Litchfield*, 824 N.E.2d at 364. What was not clear to the Court was the basis upon which the officers selected the Litchfields for the seizure and search of their trash.

"Allowing random searches, or searches of those individuals whom the officers hope to find in possession of incriminating evidence gives excessive discretion to engage in fishing expeditions." *Id.* To determine whether the Litchfield search was a "fishing expedition," the Supreme Court remanded the case to the trial court to de-

---

**3.** The State may appeal "[f]rom an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution." IC 35–38–4–2(5).

**4.** Article I, Section 11 of the Indiana Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized.

cide whether, under the facts of the case, the State had articulable individualized grounds for suspecting the Litchfields of illegal activity.

On remand, the trial court found the police had no articulable individualized grounds for suspecting the Litchfields. Noting that Worm's Way was "a source for supplies for organic gardeners," the trial court found no other evidence indicating that Worm's Way was "a supplier of drug culture supplies." *Appellant's App.* at 23–24. The trial court further reasoned that the "nature of the publication in which an otherwise legitimate merchant advertises may be one factor which can be articulated in the development of suspicious activity but alone will not stand the threshold test." *Id.* at 24. The trial court granted the Litchfields' motion to suppress finding, "the record is void of individual factors which could contribute to the development of reasonable suspicion of criminal activity in conjunction with [the] Litchfields' name appearing on the list." *Id.*

On appeal, the State contends that the seizure and search of the Litchfields' trash was supported by reasonable suspicion. Again, focusing on the list, which had "proved 'extremely' reliable in locating people who were cultivating marijuana," the State asserts that the list's "high success rate" was sufficient to create reasonable suspicion that the Litchfields were growing marijuana. *Appellant's Br.* at 5. Further the State argues that the list was reliable because the State refined the list by removing apartment addresses (due to high turn-over) and general campus addresses (due to the difficulty in tracking down the recipient). The State also investigated individual properties for signs of growing operations and checked criminal histories of known residents. The State contends that, like an informant who is credible due to previous reliable information, the list was a credible source because it provided addresses of persons who were found to be involved in marijuana growing operations.

■■■■ While the State may be correct that this list is a valid tool and a good starting point for the police investigation, the list alone is not a basis for articulable individualized suspicion. Under the facts of this case, the list was less like a reliable informant and more akin to an anonymous tip. As we have noted, our analysis of reasonableness is comparable to that required for a Terry stop. *Edwards,* 832 N.E.2d at 1075.

> The United States Supreme Court has held that an anonymous tip is not enough to support the reasonable suspicion necessary for a "Terry" stop. *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). An anonymous tip is considered less reliable than a tip from a known informant. *Id.* Anonymous tips must be accompanied by specific indicia of reliability or must be corroborated by a police officer's own observation in order to pass constitutional muster. *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Reasonable suspicion may be established by the totality of circumstances. *Id.* Thus, although an anonymous tip alone will be insufficient to establish reasonable suspicion, where significant aspects of the tip are corroborated by the observations of police, a subsequent investigatory stop is likely valid. *Id.*

*Wells v. State,* 772 N.E.2d 487, 490 (Ind. Ct.App.2002).

Like an anonymous tip, the information relied on in the present case—that the Litchfields had received shipments from Worm's Way—required corroboration of criminal activity by a police officer's own observation. Worm's Way is a garden

supply company that sells tools and materials that can be used to grow all kinds of crops—legal and illegal. While the ISP listed the steps it took to make its list of potential growers more reliable, the State failed to assert that any of these steps were taken in connection with the Litchfields' property. The police did not observe the Litchfield home for excessive air conditioning or ventilation, did not observe whether window coverings hid excessive lighting, did not investigate the Litchfields' utility usage, and did not investigate the Litchfields' criminal histories.

While we appreciate the hard work of the ISP in creating a list of potential growers, and understand the difficulty that law enforcement faces in ferreting out marijuana growers, we must agree with the Litchfields that here, where the list served only as an anonymous tip, the police did not have articulable individualized suspicion to seize and search the Litchfields' trash. Finding no evidence to lead us to a conclusion opposite that of the trial court, we affirm. *Crabb*, 835 N.E.2d at 1070.

Affirmed.

BAILEY, J., and CRONE, J., concur.