**STATE of Indiana, Appellant–Plaintiff,**

v.

**Thomas A. COOK, Appellee–Defendant.**

**No. 20A04–0602–CR–73.**

Court of Appeals of Indiana.

Aug. 25, 2006.

---

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, for Appellant.

Stephen R. Bowers, Brian K. Lakey, Elkhart, IN, for Appellee.

## OPINION

MAY, Judge.

The State appeals the grant of Thomas A. Cook's motion to suppress evidence obtained from his trash. The police seized Cook's trash because his name was on a list of customers who had purchased products from Worm's Way, a garden supply company. The presence of Cook's name on that customer list did not give police "articulable individualized grounds," *State v. Litchfield,* 849 N.E.2d 170, 173 (Ind.Ct. App.2006) (*"Litchfield II"*), for suspecting Cook of illegal activity. We accordingly affirm the grant of Cook's motion to suppress.[1]

## FACTS

In recent years the federal Drug Enforcement Agency ("DEA") has subpoenaed records from shipping companies to obtain information about customers of businesses selling equipment that might be used for growing marijuana. One of those businesses is Worm's Way. Cook received a package from Worm's Way in February of 2004 and the DEA gave Cook's address to the Indiana State Police. In May of 2005 police went to Cook's home at about 4 a.m. and took a trashcan he had set out for collection. They searched Cook's trash and found some burnt rolling papers that contained marijuana. The police returned two days later and again took Cook's trash. They found four cut marijuana stalks and some leaves. The police then sought and obtained a search warrant for Cook's home. They executed the warrant and seized evidence Cook was growing marijuana.

Cook was charged with cultivation and possession of marijuana, both Class D felonies. He moved to suppress the evidence

---

1. Because we affirm, we need not address Cook's alternative argument the information that led the police to search his trash was stale.

on the ground the searches of his trash were unreasonable. The trial court granted his motion, finding there was not "sufficient reasonable suspicion [Cook] was involved in criminal conduct." (App. at 43.)

### DISCUSSION AND DECISION

 On appeal from the grant of a motion to suppress, the State appeals a negative judgment and must show the trial court's ruling on the suppression motion was contrary to law. *Litchfield II*, 849 N.E.2d at 173. We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. *Id.* We do not reweigh the evidence or judge the credibility of the witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.*

 The State asserts the seizure of Cook's trash was supported by reasonable suspicion because police based their decision to seize it "on a list that had proved extremely reliable[2] in locating people who

were cultivating marijuana." (Br. of Appellant at 4) (footnote supplied). It was not.

We recently resolved this issue in *Litchfield II*, a case with facts almost identical to those in the case before us.[3] There, as here, the State appealed the trial court's grant of a motion to suppress evidence obtained in a trash pull. We determined the fact the Litchfields were on a list of people who had received shipments from Worm's Way did not provide "articulable individualized grounds" to suspect the Litchfields were engaged in illegal activity and thus to permit the trash pull. 849 N.E.2d at 173.

Our Supreme Court noted in *Litchfield I* that "Allowing random searches, or searches of those individuals whom the officers hope to find in possession of incriminating evidence gives excessive discretion to engage in fishing expeditions." We accordingly determined in *Litchfield II*:

the list alone is not a basis for articulable individualized suspicion. Under the

---

2. While the DEA list apparently led to a number of people who were cultivating marijuana, an Indiana State Police trooper testified that in 2004, the year Cook received the package from Worm's Way, police obtained trash from seventeen people on the list and fewer than half the trash pulls were "positive." (Tr. at 14.)

The dissent would find reasonable suspicion for the trash seizure: "In sum, Trooper Murphy testified that 92% of the names from the DEA list had illicit substances in their trash." Slip op. at 8. The specific testimony to which the dissent cites is the trooper's response "Correct" (Tr. at 29) to this question from the prosecutor: "And, out of that collection, as you testified before, 92% and then 47% and then you realize, if I'm not mistaken, you testified that one of those companies wasn't providing information. So, you stopped using them [sic]. And you're back up to 100%." (*Id.*)

The DEA had provided lists for the years 2001 through 2004, but the trooper's prior

testimony to which the prosecutor was apparently referring was limited to the year 2003. The Trooper testified there were twenty-seven names on the DEA list that year, but only fourteen of those twenty-seven people were subjected to a trash pull. Thirteen of the trash seizures, or 92%, revealed "something positive." (*Id.* at 14.) So, for that one year about which the trooper was testifying, only thirteen, or about 48% of "the names from the DEA list," op. at 487, had illicit substances in their trash.

We decline to adopt the dissent's apparent characterization of the trooper's testimony that "In sum," op. at 487, thirteen of twenty-seven people on the DEA list for one out of four years the list was provided demonstrates the DEA list was proven correct "92%" of the time. *Id.*

3. *Litchfield II* is the appeal after the remand our Indiana Supreme Court ordered in *Litchfield v. State*, 824 N.E.2d 356 (Ind.2005) ("*Litchfield I*").

facts of this case, the list was less like a reliable informant and more akin to an anonymous tip. As we have noted, our analysis of reasonableness is comparable to that required for a *Terry* stop.

The United States Supreme Court has held that an anonymous tip is not enough to support the reasonable suspicion necessary for a *"Terry"* stop. An anonymous tip is considered less reliable than a tip from a known informant. Anonymous tips must be accompanied by specific indicia of reliability or must be corroborated by a police officer's own observation in order to pass constitutional muster. Reasonable suspicion may be established by the totality of circumstances. Thus, although an anonymous tip alone will be insufficient to establish reasonable suspicion, where significant aspects of the tip are corroborated by the observations of police, a subsequent investigatory stop is likely valid.

Like an anonymous tip, the information relied on in the present case—that the Litchfields had received shipments from Worm's Way—required corroboration of criminal activity by a police officer's own observation. Worm's Way is a garden supply company that sells tools and materials that can be used to grow all kinds of crops—legal and illegal. While the ISP listed the steps it took to make its list of potential growers more reliable, the State failed to assert that any of these steps were taken in connection with the Litchfields' property.

849 N.E.2d at 174 (citations omitted).

The facts in the case before us compel the same result we reached in *Litchfield II*. We accordingly affirm.

Affirmed.

SULLIVAN, J., concurs.

BAKER, J., dissents with opinion.

BAKER, Judge, dissenting.

I respectfully dissent from the majority's decision to affirm the trial court's grant of Cook's motion to suppress. In particular, I part ways with the determination that the State failed to establish a reasonable suspicion for seizing the trash in these circumstances. As a panel of this court acknowledged in *Litchfield II:* [4]

An anonymous tip is considered less reliable than a tip from a known informant. Anonymous tips must be accompanied by specific indicia of reliablility or must be corroborated by a police officer's own observation in order to pass constitutional muster. *Reasonable suspicion may be established by the totality of circumstances.*

849 N.E.2d at 174 (emphasis added). Both the *Litchfield I* [5] and *Litchfield II* courts condemned the notion of a "fishing expedition," or those seizures that involve "random searches or searches of those individuals whom the officers hope to find in possession of incriminating evidence." *Litchfield I*, 824 N.E.2d at 364; *Litchfield II*, 849 N.E.2d at 174.

As the majority observes, our Supreme Court determined in *Litchfield I* that the standard for determining whether a "trash pull" is lawful is "essentially the same as is required for a 'Terry stop' of an automobile." *Id.* (referencing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). However, I cannot agree with the result reached here—as well as that which was reached in *Litchfield II*—that the State failed to satisfy the *Terry* standard.

4. *State v. Litchfield,* 849 N.E.2d 170 (Ind.Ct. App.2006).

5. *Litchfield v. State,* 824 N.E.2d 356 (Ind. 2005).

The standard of reasonable suspicion is not the same as probable cause. In particular, while reasonable suspicion requires more than an inchoate or unparticularized hunch, it is a less demanding standard than probable cause and requires a showing of "considerably less" proof than what is required to establish wrongdoing by a preponderance of the evidence. *Cardwell v. State*, 666 N.E.2d 420, 422 (Ind.Ct.App. 1996). Again, "reasonable suspicion" is determined on a case-by-case basis by examining the totality of the circumstances. *Person v. State*, 764 N.E.2d 743, 748 (Ind. Ct.App.2002). When determining whether reasonable suspicion exists, police officers may rely on a source that has proven credible and accurate in the past. *Massey v. State*, 816 N.E.2d 979, 988 (Ind.Ct.App. 2004). Accurate information in the past that leads a police officer to a seizure of controlled substances is sufficient to demonstrate that the source is credible and reliable. *Id.* On the other hand, probable cause is established where a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of the premises, or person will uncover evidence of a crime. *Walker v. State*, 829 N.E.2d 591, 594 (Ind.Ct.App.2005), *trans. denied.*

When examining the record here, it is apparent to me that the police officers did not seize Cook's trash in an arbitrary or random fashion with the mere hope of finding contraband. Rather, the record demonstrates that the State Police relied on a DEA list that had proven to be reliable for a number of years in determining the locations of marijuana cultivation activities. The information supplied to the officers repeatedly led them to individuals who had been engaged in such operations. Specifically, during the first year, thirteen of the fourteen trash pulls yielded some sort of drug paraphernalia. Tr. p. 13–14. During the second year, eight of seventeen trash pulls produced positive results, and in the year that Cook's trash was seized, each of the five trash pulls stemming from the DEA list yielded evidence of marijuana cultivation. *Id.* at 13–15. Three of the names from 2005 were derived from Worm's Way, and all three individuals had been involved in marijuana growth. *Id.* at 15. In sum, Trooper Murphy testified that 92% of the names from the DEA list had illicit substances in their trash. *Id.* at 29.

When considering the DEA list that had been compiled from individuals who had purchased products from Worm's Way and other growing companies, it is apparent that these lists had proven to be reliable in determining the locations of various marijuana cultivation operations. By the same token, random, arbitrary trash pulls would not routinely reveal contraband.

That said, I believe that the "specific indicia of reliability" requirement was satisfied here under the *Terry* standard. Therefore, I reject the notion that the seizure of Cook's trash was merely random and based on some inchoate hunch by police officers that Cook "might" be in possession of contraband. For these reasons, I vote to reverse the trial court's grant of the motion to suppress.