**Michael ROTZ, Sue Rotz, Appellants–Defendants,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–0709–CR–452.

Court of Appeals of Indiana.

Oct. 6, 2008.

James E. Foster, Funk & Foster, Hammond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Michael A. Rotz and Sue Rotz appeal the denial of their motion to suppress. They argue the probable cause affidavit was insufficient to permit issuance of the search warrant. We affirm and remand for trial.

## FACTS AND PROCEDURAL HISTORY

In March 2006, Indiana State Police Trooper Jason Sample received information from the Drug Enforcement Agency (DEA) that Michael Rotz received a shipment from Greentree Hydroponics Company, which was known to sell propagation, irrigation, lighting, and other equipment to marijuana growing operations. Trooper Sample confirmed Rotz's address and determined Rotz had a criminal history. On April 24, 2006, Trooper Sample conducted surveillance on the Rotzes' home by driving by and taking photographs. He noticed all the blinds were drawn and the basement windows were covered.

On May 18, 2006, Trooper Sample and Trooper Gerald Michalak retrieved the Rotzes' trash, which had been placed in a public alley behind their home for collection. They recovered marijuana stems and leaves, an empty container of Zig Zag rolling papers, and burnt hand-rolled marijuana cigarette butts. Also recovered was mail addressed to Michael Rotz. Trooper Sample then executed an affidavit detailing this information and obtained a search warrant for the Rotzes' home. Police found eight live marijuana plants in the basement, other marijuana throughout the home, and firearms.

Michael was charged with unlawful possession of a firearm by a serious violent felon, a Class B felony,[1] and dealing in marijuana, a Class D felony.[2] Both Michael and Sue were charged with maintain-

---

1. Ind.Code § 35–47–4–5(a)(1)(B) and (b)(12).

2. Ind.Code § 35–48–4–10(a)(1)(A).

ing a common nuisance, a Class D felony.[3] The Rotzes filed a motion to suppress, arguing Trooper Sample's affidavit did not demonstrate he had reasonable, articulable suspicion to conduct a trash search.[4] *See Litchfield v. State,* 824 N.E.2d 356, 364 (Ind.2005) (Art. 1, § 11 requires articulable individualized suspicion for a trash search). After a hearing at which Troopers Sample and Michalak testified, the trial court denied the Rotzes' motion.

## DISCUSSION AND DECISION

The Rotzes raise two issues, which we restate as three: (1) whether the trial court erred by admitting the testimony of Troopers Sample and Michalak at the suppression hearing; (2) whether the warrant was invalid because Trooper Sample's affidavit contained false or misleading statements; and (3) whether Trooper Sample's affidavit demonstrated he had reasonable, articulable suspicion to search the Rotzes' trash.

### 1. *Troopers' Testimony*

■ The Rotzes argue the trial court erred by admitting the Troopers' testimony because the State was attempting to buttress Trooper Sample's affidavit with extrinsic evidence. *See Seltzer v. State,* 489 N.E.2d 939, 941–42 (Ind.1986) (When ruling on a motion to suppress, the "issue is 'whether the affidavit itself, without additional information or testimony presented after the search warrant is executed, alleges sufficient facts upon which the issuing authority could have made an independent determination of probable cause.' ") (*quoting Flaherty v. State,* 443 N.E.2d 340, 343 (Ind.Ct.App.1983)). Extrinsic evidence is not admissible when an affidavit is attacked as not showing probable cause on

its face, *Flaherty,* 443 N.E.2d at 342–43; however, the Rotzes also alleged Trooper Sample's affidavit contained misstatements and omissions. The Rotzes cite no authority that the State may not offer evidence to rebut such allegations, and we will consider the Troopers' testimony for that purpose.

### 2. *Misstatements and Omissions*

■ Trooper Sample's affidavit states:

In March of 2006, this Affiant received information from the Drug Enforcement Administration ... advising that products from the Greentree Hydroponics Company, known to supply propagation, irrigation, lighting, and various other products from marijuana grow operations had been shipped to the address of 235 N[.] Indiana Street in Griffith. The shipments were sent to a Michael Rotz.

This Affiant ran a name search on Michael Rotz.... The name search revealed that a Michael A. Rotz lives at 235 N[.] Indiana Street in Griffith, Indiana. This Affiant also ran a criminal history check on Michael A. Rotz. This Affiant found that Rotz does have a positive criminal history thru [sic] Indiana and Florida. Most notably Rotz has an arrest for possession of marijuana in Indiana and possession of narcotic equipment in Florida.

To further this investigation, on 4/24/06 at about 0915 hours I drove past the residence located at 235 N[.] Indiana Street in Griffith, Indiana. I took several photographs of the residence. I noticed that all of the blinds were drawn on the windows. I also noticed that the basement windows on the north and

---

3. Ind.Code § 35–48–4–13(b)(2)(B).

4. The Rotzes do not contest that the items found in their trash provided probable cause to search their home.

south side of the residence were covered.

(Appellant's App. at 12.)

The Rotzes criticize the affidavit because it does not indicate the date the shipment from Greentree was received. They note Trooper Sample's affidavit erroneously stated Michael had an arrest in Indiana for possession of marijuana, when it actually occurred in Florida in 1983. The Rotzes' argue Trooper Sample should have included the dates of the arrests and their dispositions. They also argue Trooper Sample should have stated how many windows were in the house and how many were covered. The Rotzes assert the misstatement and the omissions led the issuing magistrate to erroneously conclude the Troopers had reasonable suspicion to conduct the trash search.

 "Mistakes and inaccuracies in search warrant affidavits will not 'vitiate the reliability of the affidavits so long as such mistakes were innocently made.'" *Lundquist v. State,* 834 N.E.2d 1061, 1072 (Ind.Ct.App.2005) (*quoting Mitchell v. State,* 745 N.E.2d 775, 785 (Ind.2001)). Rather, the defendant must make a substantial showing that the officer included or omitted the facts in reckless disregard for the truth. *Id.* The defendant must also demonstrate the affidavit would not have been sufficient if it did not contain omissions or misstatements. *Ware v. State,* 859 N.E.2d 708, 718 (Ind.Ct.App. 2007). We conclude the Rotzes have not made this showing.

Trooper Sample testified he normally included the date of the shipment in affidavits, and his failure to do so in this case was an oversight. The shipment would have been received sometime in 2005, and

Trooper Sample's affidavit explained that marijuana grow operations often continue for years:

> This Affiant has also found that marijuana grow operations continue for long periods of time, with consistent grows operating for several years not being uncommon. Persons engaging in grow operations, in this Affiant's training and experience, tend to purchase items used in the manufacturing/growing process for continuous and repeated use.

(Appellant's App. at 13.)

We find it of no moment that the possession of marijuana arrest occurred in Florida rather than Indiana. The Rotzes criticize Trooper Sample for not including the dispositions of his arrests, but have not shown that including the outcomes of Michael's arrests would have reduced the probative value of those arrests. The affidavit does not suggest Michael was convicted, and a magistrate is capable of determining the probative weight of an arrest. Trooper Sample testified he considered an arrest "indicative that the suspect had been involved in something illegal" and explained that dispositions were not always available. (Tr. at 61.) Trooper Sample testified he normally did not include arrest dates because he believed it did not affect the analysis of a person's character. A recent arrest would be more probative; however, Michael's multiple arrests do suggest continuing drug activity.[5]

Trooper Sample's affidavit indicated "all of the blinds were drawn on the windows" and "the basement windows on the north and south side of the residence were covered." (Appellant's App. at 12.) The affidavit explains that when marijuana is

---

**5.** The Rotzes focus on the details of Michael's arrest for possession of marijuana, but they did not cross-examine Trooper Sample concerning the arrest for possession of narcotic equipment.

grown in a home, windows are generally covered so that the plants respond only to the lights used by growers and to hide the plants and lights from the view of people outside the home. The Rotzes asked the trial court to view their home, and the trial court noted in its findings that its view of the premises was consistent with Trooper Sample's description. The Rotzes have not made a substantial showing that any of the alleged omissions or the misstatement concerning the arrest were made with reckless disregard for the truth or that they impacted the magistrate's finding of reasonable suspicion.

### 3. *Reasonable Suspicion*

■ Our review of a ruling on a motion to suppress is similar to other sufficiency issues. *Litchfield,* 824 N.E.2d at 357. We determine whether there is substantial evidence of probative value to support the ruling. *Id.* We do not reweigh the evidence and we consider conflicting evidence most favorably to the ruling. *Id.*

■ In order to conduct a trash search, the police must have "articulable individualized suspicion, essentially the same as is required for a 'Terry stop.'" *Id.* at 364. "Reasonable suspicion entails some minimum level of objective justification for making a stop; something more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *State v. Straub,* 749 N.E.2d 593, 598 (Ind.Ct.App.2001).

The Rotzes compare their case to *State v. Cook,* 853 N.E.2d 483 (Ind.Ct.App.2006), and *State v. Litchfield,* 849 N.E.2d 170 (Ind.Ct.App.2006). However, in those cases, the State relied solely on the DEA list as providing reasonable suspicion for a trash search. In *Litchfield,* we held the DEA list was akin to an anonymous tip, which requires some corroboration. 849

N.E.2d at 174. Finding there was no reasonable suspicion, we noted:

> The police did not observe the Litchfield home for excessive air conditioning or ventilation, did not observe whether window coverings hid excessive lighting, did not investigate the Litchfields' utility usage, and did not investigate the Litchfields' criminal histories.

*Id.* at 175. In this case, the police found Michael had a criminal history that included arrests for drug offenses and observed the Rotzes' house windows were covered. This information gave the police more than a "hunch" that the Rotzes were growing marijuana, and provided a sufficient basis for the issuing magistrate to conclude the police had reasonable suspicion to search the Rotzes' trash. We affirm and remand for trial.

Affirmed and remanded.

MATHIAS, J., and VAIDIK, J., concur.