Robert MAYS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A04–9805–CR–273.

Court of Appeals of Indiana.

Nov. 22, 1999.

Transfer Denied Jan. 19, 2000.

Ronald J. Moore, Boston Bever Klinge, Cross Chidester, Richmond, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Robert Mays appeals his convictions for Dealing in Cocaine, as a Class B felony, and Possession of Cocaine with Intent to

Deliver, as a Class A felony, and from his adjudication as an habitual offender. The sole issue presented for our review is whether Mays received ineffective assistance of trial counsel because counsel failed to object to the admission into evidence of the cocaine which gave rise to the possession charge.

We affirm.

## FACTS

On August 29, 1996, a confidential informant ("C.I.") for the Richmond Police Department arranged to purchase crack cocaine from Mays at Randy and Jennifer Carpenter's apartment. Their first-floor apartment was located in a two-story, four-unit dwelling with two units on each floor. The back of the building had three doors, one of which led to the Carpenters' apartment. The upstairs apartments were accessed through a center door which opened into an atrium where the doors to the second-floor apartments were located.

Randy Carpenter informed the C.I. that Mays was at his apartment, and it would be an opportune time for the C.I. to purchase cocaine. Later in the day, the C.I. approached the back door of Carpenter's apartment. Mays did not answer the door but, speaking through a nearby window, he instructed the C.I. to wait in his vehicle. Mays then left the apartment through a front door, walked around back, and entered the center door. After about thirty seconds, he exited through the same door and completed the sale of two rocks of crack cocaine at the C.I.'s vehicle. At the C.I.'s request, Mays retrieved another rock of crack cocaine from the same area, which he also sold to the C.I.

Later that day, officers from the Richmond Police Department arrested Mays, Randy Carpenter, Jennifer Carpenter and Jennifer's sister, who lived with the Car-

penters.[1] Although the police did not search the Carpenters' apartment, Officer Michael Wamsley searched the atrium leading to the upstairs apartments. Wamsley noticed that the door frame to one of the apartments did not extend all the way to the floor. He reached inside the opening in the frame and found a plastic baggie holding approximately 3.5 grams of cocaine.

Mays filed a pre-trial motion to suppress the 3.5 grams of cocaine, but the State argued that he did not have standing to challenge the search and seizure. Following a hearing, the trial court denied Mays' motion. At trial, defense counsel did not object to the admission of the cocaine found in the door frame. The jury convicted Mays of dealing in cocaine and possession of cocaine with intent to deliver. In a bifurcated proceeding, the jury also found Mays to be an habitual offender. Mays now appeals.

## DISCUSSION AND DECISION

■■■ Mays contends that his trial counsel was ineffective because he failed to object to the State's introduction of the 3.5 grams of cocaine into evidence at his trial. To prevail on a claim of ineffective assistance of counsel, the defendant must show that his counsel's performance fell below an objective standard of reasonableness as determined by prevailing professional norms and that the lack of reasonable representation prejudiced him. *Rondon v. State,* 711 N.E.2d 506, 517 (Ind.1999) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The defendant must rebut the presumption that trial counsel exercised reasonable judgment and rendered adequate assistance with strong and convincing evidence to the contrary. *Id.* In order to prove ineffective assistance due to

---

1. On appeal, Mays does not claim to have lived in the Carpenters' apartment at the time of the search and seizure, and the record is unclear on this question. At Mays' trial, the C.I. testified that Mays lived with the Carpen-

ters. Record at 659, 690. However, at the hearing on Mays' motion to suppress, Officer Wamsley testified that when he was arrested, Mays stated that he lived in Union City. Record at 276.

the failure to object, the defendant must prove that an objection would have been sustained by the trial court and that he was prejudiced by the failure. *Timberlake v. State,* 690 N.E.2d 243, 259 (Ind.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999).

Here, Mays argues that the warrantless search of the atrium was illegal under both the Fourth Amendment to the United States Constitution and under Article I, Section 11 of the Indiana Constitution. Thus, he contends, if trial counsel had objected, the objection would have been sustained. The State counters that Mays does not have standing to object to the seizure of the cocaine and, thus, any objection would have been overruled.

■■■ The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. *Brown v. State,* 691 N.E.2d 438, 443 (Ind.1998). Federal Fourth Amendment rights are personal and may not be vicariously asserted. *Peterson v. State,* 674 N.E.2d 528, 532 (Ind.1996) (quoting *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)), *cert. denied,* 522 U.S. 1078, 118 S.Ct. 858, 118 S.Ct. 858 (1998). The definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing. *Minnesota v. Carter,* 525 U.S. 83, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998). Thus, in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched and that his expectation is reasonable. *Id.* In reviewing whether a privacy expectation exists under the Fourth Amendment, an appellate court also examines whether the defendant has control over or ownership in the premises searched. *Peterson,* 674 N.E.2d at 532.

Here, the four-unit apartment building was divided into two apartments on each floor. Apparently, each downstairs apartment was accessible through either a front or back door. Between those two back doors was a third unlocked door through which the upstairs apartments were accessed. Officer Wamsley entered the building through that door and noticed that an upstairs apartment door frame did not extend to the floor. He found the cocaine at issue in that opening.

Mays argues that he had a legitimate expectation of privacy in the atrium leading to the upstairs apartments. In support of his argument, he cites *State v. Foreman,* 662 N.E.2d 929 (Ind.1996). The defendant in *Foreman* leased a room in a bingo hall in which he stored video gambling machines used by patrons of the bingo hall. *Id.* at 930–31. The door was closed and locked, but police officers removed it from its hinges in order to search the premises. In holding that the warrantless search violated the Fourth Amendment, our supreme court recognized that the defendant had a legitimate expectation of privacy in the room, at least while it was locked and general public access denied, even though several persons possessed keys to open the door. *Id.* at 933–34.

■ Unlike *Foreman,* the door in this case was unlocked. Officer Wamsley testified that any paper boy or child playing in the neighborhood could enter the building through that door. Further, Mays did not exercise control over the atrium, which was used by tenants to gain access to their upstairs residences. Under these circumstances, Mays had no reasonable expectation of privacy in the premises searched. *See Peterson,* 674 N.E.2d at 533 (no reasonable expectation of privacy where defendant had no ownership or control of apartment, no fewer than six individuals had keys to apartment, and defendant's friend exercised access and control over defendant's bedroom when he was not there). We conclude that the search of the atrium and the seizure of the 3.5 grams of

cocaine did not violate Mays' Fourth Amendment rights.

 Article I, Section 11 of the Indiana Constitution provides an independent prohibition against unreasonable searches and seizures. *Id.* The right of Indiana citizens "to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure" under Section 11 is a personal right of the individual whose person, house, papers or effects are searched or seized. *Id.* at 533–34 (citing *Snedegar v. State,* 196 Ind. 254, 257, 146 N.E. 849, 849–50 (1925)). Indiana law has also imposed a requirement of standing to challenge a search or seizure. *Id.* at 534. While the Fourth Amendment inquiry focuses largely on the defendant's privacy expectation in the premises searched, cases interpreting our state constitution focus both on the premises searched and the defendant's interest in the property seized. *Id.* Thus, to challenge evidence as the result of an unreasonable search or seizure under Article I, Section 11, a defendant must establish ownership, control, possession, or interest in either the premises searched or the property seized. *Id.*

■ For obvious reasons, Mays does not admit that he owned, controlled, possessed or had any other interest in the cocaine seized in the hallway. Thus, the question presented is whether he has established a protected interest in the premises where the cocaine was found. As stated previously, Mays merely used the door frame in the atrium as a convenient place to store his illegal drug inventory. Any other person could have used that area for similar purposes. Mays did not have ownership, control, possession or an interest in the premises where the cocaine was found. Accordingly, Mays does not have standing to challenge the search and seizure under Article I, Section 11 of the Indiana Constitution. His claim that the State violated his Indiana constitutional rights fails.

## CONCLUSION

The search of the atrium did not violate Mays' rights under either the United States or Indiana Constitutions. If defense counsel would have objected to introduction of the 3.5 grams of cocaine into evidence, the objection would have been overruled. Thus, counsel's performance did not fall below an objective standard of reasonableness as determined by prevailing professional norms, and Mays has not shown that he received ineffective assistance of counsel. Finding no basis for reversal, we affirm Mays' convictions and habitual offender adjudication.

Affirmed.

STATON, J., and RUCKER, J., concur.