**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH A. LAINHART, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 24A01-1108-CR-371 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FRANKLIN CIRCUIT COURT
The Honorable J. Steven Cox, Judge
Cause No. 24C01-1009-FB-48

**March 9, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Kenneth A. Lainhart appeals his conviction for dealing in methamphetamine, as a Class B felony, following a jury trial. Lainhart raises the following five issues for our review:

1.    Whether the State violated his right to be free from unreasonable searches under the federal or Indiana constitutions;

2.    Whether the trial court committed fundamental error when it permitted an arresting officer to testify that Lainhart's acquaintance at the crime scene stated that the two were there to "cook meth," transcript at 77;

3.    Whether the State adequately demonstrated chain of custody over the numerous exhibits it had seized from the crime scene;

4.    Whether the trial court abused its discretion when it instructed the jury on accomplice liability; and

5.    Whether the State presented sufficient evidence to support Lainhart's conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 14, 2010, a group of surveyors observed a red van drive off Laurel Road in Franklin County at a high rate of speed, up a hill, and into the woods. The surveyors observed the van leave the woods later and subsequently return. Thinking the behavior suspicious, the surveyors informed the Franklin County Sheriff's Department. Chief Deputy Doug Baker and Deputy Sheriff Brad Lecher responded to the call and spoke with the surveyors. The officers entered the wooded area near where the van had reportedly entered and followed a "rough" path for about a mile and a half. Transcript at 74.

2

The officers then observed a parked red van with two people standing behind the van's open back doors. The two individuals were engrossed "in whatever they were doing" and did not notice the officers arrive in their vehicle. Id. at 75. But when the officers exited their vehicle, Lainhart "took off running" while the other person "stayed at the back of the van." Id. at 74. Officer Baker recognized Lainhart and ordered him to stop, and Officer Lecher pursued Lainhart on foot. Lainhart ran into a tree, at which time Officer Lecher handcuffed him.

Officer Baker approached the other person at the scene, Bonnie Scarette. As he approached her at the van, he saw that, "[a]ll the way down through the woods[,] there w[ere] precursors of a meth lab." Id. at 76. Officer Baker asked Scarette to move "away from the lab because of the smell and . . . the hazardous material around." Id. at 77. Officer Baker then read Scarette her Miranda rights, and she told him that she and Lainhart were there to "cook meth." Id.

Later, Trooper Jeremy Franklin, an expert in the manufacture of methamphetamine, arrived at the scene. He seized a total of thirty-eight precursors as well as equipment used in the manufacture of methamphetamine. In the van he observed a container of pink sludge floating in liquid, a second container of pieces of lithium floating in liquid, and a fifty-pound bag of ammonium nitrate. A short distance away he found bottles of Drano, propane tanks, and a five-gallon bucket with tubes attached to it. Officer Franklin recognized all of these items as part of a meth lab.

On September 17, 2010, the State charged Lainhart with dealing in methamphetamine, as a Class B felony. The trial court held Lainhart's two-day trial on

June 6 and 7, 2011, after which a jury found him guilty. This appeal ensued. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### Issue One:  Reasonableness of the Search

Lainhart first contends that the State violated his right to be free from unreasonable search and seizure under the Fourth Amendment to the U.S. Constitution and under Article I, Section 11 of the Indiana Constitution. Specifically, Lainhart argues that "[t]he officers' pursuit of the van on private property violated the Fourth Amendment." Appellant's Br. at 12. For the same reason, Lainhart contends that his rights under the Indiana Constitution were violated.[1]

"[T]he Fourth Amendment protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967). Further:

> The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. Brown v. State, 691 N.E.2d 438, 443 (Ind. 1998). Federal Fourth Amendment rights are personal and may not be vicariously asserted. Peterson v. State, 674 N.E.2d 528, 532 (Ind. 1996) (quoting Rakas v. Illinois, 439 U.S. 128, 133-34 (1978)), cert. denied, 522 U.S. 1078 (1998). The definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing. Minnesota v. Carter, 525 U.S. 83 (1998). Thus, in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched and that his expectation is reasonable. Id. In reviewing whether a privacy expectation exists under the Fourth Amendment, an appellate court also examines

---

[1] Lainhart twice makes a fleeting comment that "passengers have standing to challenge any part of a vehicle stop." Appellant's Br. at 13, 17. However, the entirety of Lainhart's Fourth Amendment and Article I, Section 11 arguments are based only on the police intrusion onto the private property, not on the police search of the vehicle. We consider only the actual arguments raised by Lainhart and do not undertake the burden of arguing an alternative position on his behalf. Fleeting references are not a substitute for arguments supported by cogent reasoning. See Ind. Appellate Rule 46(A)(8)(a); see, e.g., Patel v. United Inns, Inc., 887 N.E.2d 139, 149 n.6 (Ind. Ct. App. 2008).

4

whether the defendant has control over or ownership in the premises searched. Peterson, 674 N.E.2d at 532.

* * *

Article I, Section 11 of the Indiana Constitution provides an independent prohibition against unreasonable searches and seizures. Id. [at 533]. The right of Indiana citizens "to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure" under Section 11 is a personal right of the individual whose person, house, papers or effects are searched or seized. Id. at 533-34 (citing Snedegar v. State, 196 Ind. 254, 257, 146 N.E. 849, 849-50 (1925)). Indiana law has also imposed a requirement of standing to challenge a search or seizure. Id. at 534. While the Fourth Amendment inquiry focuses largely on the defendant's privacy expectation in the premises searched, cases interpreting our state constitution focus both on the premises searched and the defendant's interest in the property seized. Id. Thus, to challenge evidence as the result of an unreasonable search or seizure under Article I, Section 11, a defendant must establish ownership, control, possession, or interest in either the premises searched or the property seized. Id.

Mays v. State, 719 N.E.2d 1263, 1266-67 (Ind. Ct. App. 1999), trans. denied.

The trial court concluded, and we agree, that Lainhart does not have standing under either constitutional provision to challenge the police entry onto the property in question. The undisputed evidence shows that Lainhart did not have ownership, control, possession, or an interest in the searched premises. Accordingly, he had no expectation of privacy and lacks standing to complain about the State's intrusion onto those premises under both the federal and the state constitutions. See id.

**Issue Two: Confrontation Clause**

Lainhart next contends that the trial court erroneously admitted Officer Baker's testimony that Scarette stated she and Lainhart were in the woods to "cook meth." See Transcript at 77. Specifically, Lainhart argues that the admission of that statement denied him the right to confront Scarette and permitted the jury to hear inadmissible hearsay.

5

But Lainhart acknowledges that his trial counsel did not object to Officer Baker's testimony and, as such, that on appeal he must demonstrate fundamental error. "A fundamental error is a substantial, blatant violation of basic principles of due process rendering the trial unfair to the defendant." Taylor v. State, 717 N.E.2d 90, 93 (Ind. 1999). "[W]e view this exception as an extremely narrow one, available only when the record reveals clearly blatant violations of basic and elementary principles of due process, and the harm or the potential for harm cannot be denied." Canaan v. State, 683 N.E.2d 227, 235 n.6 (Ind. 1997) (quotation and alterations omitted).

Lainhart's argument on appeal does not demonstrate fundamental error. The State's evidence over a two-day trial included the arresting officers' testimonies that they had observed Lainhart at the crime scene and that he had fled from them upon their arrival. The State also introduced a host of exhibits seized from the van that thoroughly demonstrated the van was being used as a laboratory for manufacturing methamphetamine. And the prosecutor did not reference the one-time reiteration of Scarette's comment in either his opening or closing statement. We are confident that, even if that evidence had been excluded, the jury would have reached the same result that it did. Accordingly, the admission of that testimony did not obviously harm Lainhart and did not harm him beyond a reasonable doubt. See id.; Simpson v. State, 628 N.E.2d 1215, 1219 (Ind. Ct. App. 1994), trans. denied.

### Issue Three: Chain of Custody

Lainhart next asserts that the State failed to establish a proper chain of custody over the evidence seized from the scene when it sought to admit that evidence at trial.

Generally, the sufficiency of an evidentiary foundation is a matter left to the trial court's sound discretion, and we will reverse only upon a showing of an abuse of that discretion. Payne v. State, 658 N.E.2d 635, 644 (Ind. Ct. App. 1995), trans. denied. An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Roush v. State, 875 N.E.2d 801, 808 (Ind. Ct. App. 2008).

> Regarding chain of custody in particular, our supreme court has held:
>
> The requirement that a chain of custody be proven by a party submitting physical evidence at trial is an attempt to satisfy the goal of assuring the trial court that the evidence submitted has not been substituted or tampered with. While the State is not required to exclude every possibility of tampering, the chain of custody must give reasonable assurances that the property passed through the hands of the parties in an undisturbed condition.

Johnson v. State, 580 N.E.2d 670, 671-72 (Ind. 1991) (quotation and citation omitted). Further, "the State need not establish a perfect chain of custody whereby any gaps go to the weight of the evidence and not to admissibility." Culver v. State, 727 N.E.2d 1062, 1067 (Ind. 2000).

The State demonstrated chain of custody to the exhibits in question. At trial, Officer Franklin testified that he removed items from the crime scene and placed them in the locked trunk of his police vehicle. Transcript at 140. The next day, he signed the items over to Officer Lecher, who placed the items in his personal storage locker, to which only he possessed the key. Id. at 130-31. Thereafter, Officer Lecher signed the items over to Officer Baker, who then delivered the evidence to the Indiana State Police Laboratory ("the ISP Lab"). Id. at 142. An officer of the ISP Lab placed the evidence in

the ISP Lab's vault until it was tested by forensic scientist Audrey Youvonwich. Id. at 122-23. Officer Baker retrieved the evidence from the ISP Lab on May 2, 2011, and kept it in a locked evidence locker until he brought it to court for Lainhart's trial on June 6. Id. at 144-45.

Lainhart's arguments on appeal question the veracity of the witnesses and attempt to impeach their testimonies based simply on the fact that the State had to recall the witnesses in the course of establishing the exhibits' foundations and the fact that some of the witnesses had to rely on notes to recall the details of the chain of custody. These arguments, to the extent they have any merit, go only to the weight of the evidence and not to the admissibility of the exhibits. The State sufficiently demonstrated chain of custody and the trial court did not abuse its discretion in admitting the exhibits.

### Issue Four:  Jury Instructions

Lainhart also challenges the trial court's instruction to the jury on accomplice liability. As we have discussed:

> "The purpose of a jury instruction 'is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.' " Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001) (quoting Chandler v. State, 581 N.E.2d 1233, 1236 (Ind. 1991)). Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. Schmidt v. State, 816 N.E.2d 925, 930 (Ind. Ct. App. 2004), trans. denied. Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. Id. The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. Id. at 930-31. Still, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. Id. at 933 (citing Dill, 741 N.E.2d at 1233).

Williams v. State, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008). Further:

> In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court.

Simpson v. State, 915 N.E.2d 511, 519 (Ind. Ct. App. 2009) (quotation omitted), trans. denied.

Here, the trial court instructed the jury in relevant part as follows: "When one or more individuals combine to commit an offense, each is responsible for the acts committed in furtherance of their common design." Appellant's App. at 76. On appeal, Lainhart contends that that instruction was not supported by the evidence. Lainhart is incorrect.

The undisputed evidence demonstrated that Lainhart and Scarette were both present at the crime scene when the officers arrived, and the State presented overwhelming evidence that the van at the scene was being used as a laboratory for making methamphetamine. Officer Baker further testified that, upon his arrival at the scene, Lainhart and Scarette were both very engaged in "whatever they were doing." Transcript at 75. Thus, the evidence showed that Lainhart and Scarette were acting in concert, which supported the giving of an instruction on accomplice liability. The trial court did not abuse its discretion in tendering that instruction to the jury.

### Issue Five: Sufficiency of the Evidence

Finally, Lainhart argues that the State failed to present sufficient evidence to support his conviction. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783

9

N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside.

The State charged Lainhart with dealing in methamphetamine, as a Class B felony. To prove that charge, the State was required to demonstrate beyond a reasonable doubt that Lainhart knowingly or intentionally manufactured methamphetamine, pure or adulterated. Under Indiana law, "manufacture" means "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance . . . ." Ind. Code § 35-48-1-18. On appeal, Lainhart asserts that "[t]he State failed to establish manufacturing occurred and[,] even if it did, [the State] failed to establish Lainhart engaged in the manufacturing." Appellant's Br. at 33. For all of the above stated reasons, the State presented evidence sufficient to support Lainhart's conviction.

Affirmed.

ROBB, C.J., and VAIDIK, J., concur.