**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 25 2012, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**RICHARD DENNING**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRAD W. PASSWATER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 48A05-1201-PC-17 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Rudolph R. Pyle, III, Special Judge
Cause No. 48D03-0704-PC-86

**July 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Brad Passwater was convicted of Murder, a felony, following a jury trial. On direct appeal, this court affirmed his conviction, but remanded for resentencing. See Passwater v. State, No. 48A02-0501-CR-50 (Ind. Ct. App. December 28, 2005) ("Passwater I"). Passwater subsequently petitioned for post-conviction relief, which the post-conviction court denied. He now appeals, challenging the post-conviction court's judgment, and he raises a single issue for our review, namely, whether he was denied the effective assistance of trial counsel.

We affirm.

## FACTS AND PROCEDURAL HISTORY

This court set out the facts and procedural history in Passwater I:

At approximately 3:00 a.m. on October 26, 2002, Passwater awoke in the home that he shared with his mother, Sandy Passwater, in Madison County. Passwater struck Sandy in the head twice with a frying pan, killing her, and then stabbed her in the temple with a knife. Passwater later told a court-appointed psychiatrist that he had to kill Sandy to prevent Armageddon. Tr. p. 469.

On October 31, 2002, the State charged Passwater with murder. On November 25, 2003, Passwater filed a notice of intent to present a defense of mental disease and/or defect. The trial court appointed Doctors Susan Anderson and Frank Krause to evaluate Passwater. Following a hearing, the trial court concluded that Passwater was competent to stand trial.

Passwater's jury trial began on August 24, 2004. At trial, Passwater offered the testimony of Dr. George Parker, who opined that Passwater was a paranoid schizophrenic and that he had been unable to appreciate the wrongfulness of his actions when he killed Sandy. Dr. Krause, on the other hand, testified that while Passwater had some mental health issues, he had been able to appreciate the wrongfulness of his actions when he killed Sandy. Dr. Anderson was unable to form an opinion as to Passwater's state of mind at the time he killed Sandy because Passwater refused to cooperate

2

with her evaluation.  On September 1, 2004, the jury found Passwater guilty of murder but mentally ill at the time of the offense.

At the sentencing hearing on September 27, 2004, the trial court found the following aggravating factors:  the vicious, heinous, unprovoked, and premeditated nature of the crime; that Passwater was in a position of trust to Sandy; and that Passwater refused to cooperate with Dr. Anderson.[] Tr. p. 773-74.  The trial court considered Passwater's mental illness to be a mitigating circumstance, but concluded that the aggravators outweighed the mitigator, and sentenced Passwater to sixty years of incarceration.

Passwater I at *2-*3.  On direct appeal, we affirmed Passwater's conviction, but remanded for resentencing.  The trial court subsequently revised Passwater's sentence to fifty-five years, consistent with our instructions on remand.  Passwater thereafter filed a petition for post-conviction relief, which the post-conviction court denied following a hearing.  This appeal ensued.

## DISCUSSION AND DECISION

The petitioner bears the burden of establishing his grounds for post-conviction relief by a preponderance of the evidence.  Ind. Post-Conviction Rule 1(5); Harrison v. State, 707 N.E.2d 767, 773 (Ind. 1999), cert. denied, 529 U.S. 1088 (2000).  To the extent the post-conviction court denied relief in the instant case, Passwater appeals from a negative judgment and faces the rigorous burden of showing that the evidence as a whole "'leads unerringly and unmistakably to a conclusion opposite to that reached by the [lower] court.'"  See Williams v. State, 706 N.E.2d 149, 153 (Ind. 1999) (quoting Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993)), cert. denied, 529 U.S. 1113 (2000).  It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law.  Bivins v. State, 735 N.E.2d 1116, 1121 (Ind. 2000).

Passwater contends that he was denied the effective assistance of trial counsel. There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden falls on the defendant to overcome that presumption. Gibson v. State, 709 N.E.2d 11, 13 (Ind. Ct. App. 1999), trans. denied. To make a successful ineffective assistance claim, a defendant must show that: (1) his attorney's performance fell below an objective standard of reasonableness as determined by prevailing professional norms; and (2) the lack of reasonable representation prejudiced him. Mays v. State, 719 N.E.2d 1263, 1265 (Ind. Ct. App. 1999) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)), trans. denied.

Deficient performance is representation that fell below an objective standard of reasonableness by the commission of errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Roberts v. State, 894 N.E.2d 1018, 1030 (Ind. Ct. App. 2008), trans. denied. Consequently, our inquiry focuses on counsel's actions while mindful that isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render counsel's representation ineffective. Id. Even if a defendant establishes that his attorney's acts or omissions were outside the wide range of competent professional assistance, he must also establish that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See Steele v. State, 536 N.E.2d 292, 293 (Ind. 1989).

Here, at trial, Passwater pursued an insanity defense and presented expert testimony that he "suffered from paranoid schizophrenia and was unable to appreciate

that what he was doing [when he murdered his mother] was wrong." Brief of Appellant at 6. Accordingly, the jury was instructed that it could find Passwater guilty but mentally ill or not responsible by reason of insanity ("NRRI"). The jury ultimately found Passwater guilty but mentally ill, and the trial court, after remand, sentenced him to fifty-five years.

In this appeal from the denial of his petition for post-conviction relief, Passwater contends that his trial counsel was ineffective in a single respect, namely, his counsel's failure to object to the following jury instruction:

> Whenever a defendant is found not responsible by reason of insanity at the time of the crime, the prosecuting [attorney] shall file [a] written petition for mental health commitment with the Court. The court shall hold a mental health commitment hearing at the earliest opportunity after the finding of not responsible by reason of insanity, and the [defendant] shall be detained in custody until the completion of the hearing. If upon the completion of the hearing, the court finds that the defendant is mentally ill and either dangerous or gravely disabled, then the court may order the defendant to be committed to an appropriate facility, or enter an outpatient treatment program of not more than ninety (90) days.

Trial Transcript at 661-62.

Our supreme court approved that instruction as an "appropriate" one in Georgopolus v. State, 735 N.E.2d 1138, 1143 n.3 (Ind. 2000). The court cited "the potential for confusion in cases where the jury is faced with the option of finding a defendant not responsible by reason of insanity or guilty but mentally ill." Id. In Georgopolus, during voir dire, "[s]ome of the prospective jurors expressed skepticism of the [insanity] defense referring to it as a 'cop-out,' a 'loophole,' and 'a way to get a lesser plea.'" 735 N.E.2d at 1141. And during trial, the defendant sought an instruction on the consequences of the verdict options of not responsible by reason of insanity and guilty

5

but mentally ill because, he alleged, "an erroneous view of the applicable law bec[ame] implanted in the minds of the jurors." Id. Our supreme court disagreed that such an instruction was mandatory, as the defendant asserted, because the prosecutor had not caused the jurors to have "an erroneous view of the law" regarding the consequences of either verdict. Id. at 1142. Further, while the court "assume[d] without deciding that an erroneous impression of the law on this subject implanted in the minds of the jury, regardless of its source, entitles a defendant to a curative jury instruction[,]" it concluded that the jury in Georgopolus did not have such an impression. Id. Still, the court held that

> [w]hen the verdict options before a jury include not responsible by reason of insanity or guilty but mentally ill, and the defendant requests a jury instruction on the penal consequences of these verdicts, the trial court is required to give an appropriate instruction or instructions as the case may be.

Id. at 1143 (emphases added).

Here, during voir dire, defense counsel had questioned prospective jurors regarding their perceptions about the insanity defense, generally, and one prospective juror ("Juror Hill"), who was ultimately selected to serve on the jury, had commented as follows:

> I just feel like they tend to overuse the insanity [sic]. I mean if somebody's gonna just get a slap on the hand and not get the help afterwards you know. You know if they're guilty of the crime and pleading insanity I don't feel like they should just walk away, you know . . . .
>
> * * *
>
> [They] shouldn't be set free to do it again. . . .

6

Trial Transcript at 118. In other words, Juror Hill insinuated that a defendant found not guilty by reason of insanity might "just get a slap on the hand" or "just walk away" instead of being treated for his mental illness. See id.

Accordingly, Passwater's defense counsel requested a jury instruction regarding the consequences of the two verdict options here, not responsible by reason of insanity and guilty but mentally ill. Instead of requesting the instruction set out in Georgopolus, however, defense counsel offered an instruction based on a California pattern jury instruction. The trial court rejected that instruction and opted to give the instruction approved in Georgopolus.

> In his petition for post-conviction relief, Passwater asserted as follows:
>
> [The challenged] instruction harmed Passwater's defense by misleading the jury. Passwater would have been hospitalized in a secure facility for years. There was no chance that Passwater would have been treated in an outpatient treatment program after a commitment hearing. While the above instruction may be helpful in the case of a non-violent minor felony or misdemeanor, in this case it implanted an erroneous view of the law in the minds of the jurors. [Defense counsel] could have objected to the instruction, if he had thought to do so. If he had, the objection would have to [have been] sustained. The jury was at least considering an NRRI verdict or they would not have asked to re-hear the testimony of Dr. Parker and Dr. Krause. Furthermore, one juror had expressed that he did not think someone found not responsible by reason of insanity should get a "slap on the hand." There is more than a reasonable probability that if [defense counsel] had objected to the above instruction, Passwater would have been found not responsible by reason of insanity.

Appellant's App. at 23. The post-conviction court rejected Passwater's argument, concluding in relevant part:

> 4. Passwater has failed to prove that the trial court would have sustained an objection to the jury instruction on the consequences of two verdict options: not responsible by reason of insanity or guilty but mentally ill. The instruction was (and still is) a correct statement of law; the Indiana

7

Supreme Court composed and recommended it in <u>Georgopolus v. State</u>, 735 N.E.2d 1138 (Ind. 2000), and it had become a pattern jury instruction by the time of Passwater's trial. Moreover, <u>Georgopolus</u> required the trial court to give an instruction, such as the one in question, because the verdict options before the jury included not responsible by reason of insanity or guilty but mentally ill, and <u>Passwater requested a jury instruction on the consequences of those verdicts when defense counsel proposed a modified pattern jury instruction from California on the consequences of not guilty by reason of insanity</u>. . . . Lastly, review of the record reveals that the trial court had intended to give the <u>Georgopolus</u> instruction before the State proposed it, which indicates that the trial court would not have sustained defense counsel's objection had he made it. . . .

5.  Passwater has also failed to prove that the <u>Georgopolus</u> instruction probably confused or misled the jury. The Indiana Supreme Court composed and recommended the use of the <u>Georgopolus</u> instruction so as to avoid confusion, not create it. <u>Georgopolus</u>, 735 N.E.2d at 1143. Passwater's allegation of resulting prejudice is purely speculative.

6.  Passwater has failed to prove that Doctor Krause's expert opinion probably would have changed had the doctor been provided with the information he requested of defense counsel in December 2003 and January 2004. Prior to his post-conviction hearing, Passwater provided Doctor Krause with the information the doctor requested of defense counsel in December 2003 and January 2004 as well as a plethora of information he did not request. The State provided Doctor Krause with copies of his trial testimony and State's Exhibit 30, a letter, which Passwater wrote to his brother while awaiting trial, wherein he admits malingering, stating, "Well I'm going to go continue to play dumb and keep my mouth shut so everyone still thinks I'm crazy." Doctor Krause reviewed all of the information provided by the parties prior to Passwater's post-conviction hearing and testified, unequivocally, that it did not—and would not have— changed his expert opinion. Doctor Krause remained convinced, to a reasonable degree of scientific certainty, that Passwater appreciated the wrongfulness of his actions when he killed his mother. . . .

<u>Id.</u> at 61-62 (emphasis added).

On appeal, Passwater reasserts the same arguments as those presented in his petition for post-conviction relief, namely: that the instruction misled the jury; that the trial court would have sustained an objection by defense counsel; and that, had an

8

objection been made, there is "more than a reasonable probability" that he would have been found not responsible by reason of insanity. Brief of Appellant at 13. In addition, Passwater maintains that while he may have been malingering "when he wrote the letter" referenced in the post-conviction court's conclusion No. 6, that letter is "of little relevance" given the overwhelming evidence that he was "suffering from a severe mental disease when he killed his mother." Id. at 13-14.

First, we are not persuaded that the instruction misled the jury. As the post-conviction court noted, our supreme court expressly approved that instruction as a way to prevent confusion among jurors faced with choosing between the two verdict options. See Georgopolus, 735 N.E.2d at 1143. Second, here, the record shows that defense counsel requested an instruction on the consequences of finding Passwater not responsible by reason of insanity or guilty but mentally ill, albeit he proffered a California pattern jury instruction, which was rejected. Because defense counsel sought such an instruction, the trial court was required to give the instruction under Georgopolus. 735 N.E.2d at 1143 (holding trial court required to give instruction when defendant requests a jury instruction on the penal consequences of the two verdict options). Further, Passwater does not challenge the post-conviction court's conclusion that the trial court had intended to give the Georgopolus instruction even before the State proposed it. Thus, Passwater cannot show that the trial court would have sustained an objection to that instruction.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. State v. Holmes, 728 N.E.2d 164, 172 (Ind.

9

2000). A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. Here, Passwater makes no contention that his trial counsel's request for an instruction on the consequences of the two verdict options was a poor strategy or otherwise showed a lack of reasonable professional judgment. In light of that request, the trial court was required to give the Georgopolus instruction. Indeed, it would seem that his defense counsel chose a sound strategy in requesting the instruction given the apparent misunderstanding of the consequences expressed by a juror during voir dire. Passwater has not shown any deficient performance by his defense counsel, and, therefore, his claim of ineffective assistance of counsel is unavailing. See Mays, 719 N.E.2d at 1265.

Affirmed.

RILEY, J., and DARDEN, Sr.J., concur.