STATE of Indiana, Appellant–Plaintiff,

v.

Ward ATKINS, Appellee–Defendant.

No. 20A04–0505–CR–259.

Court of Appeals of Indiana.

Sept. 29, 2005.

Transfer Denied Dec. 15, 2005.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The State charged Ward Atkins with Unlawful Possession of Firearm by Serious Violent Felon, as a Class B felony. Atkins moved to suppress the evidence in support of the charge, alleging that it was obtained as the result of an unconstitutional investigatory stop. The trial court granted Atkins' motion. The State pres-

ents one issue for our review, namely, whether the trial court erred when it suppressed evidence obtained after an investigatory stop.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of October 9, 2003, Officer Mark DeJong of the Elkhart City Police Department was dispatched to 192 North Sixth Street in Elkhart in reference to a domestic disturbance call. Officer DeJong arrived at the home alone, largely unaware of the circumstances, and knocked on the front door. He did not hear anything inside the house and no one answered the front door, but soon after he knocked, Officer DeJong heard a rear door slam. Officer DeJong then proceeded around the side of the house, which was adjacent to an alleyway.

██ When he reached the side of the house, Officer DeJong encountered Atkins walking in Officer DeJong's direction "on [Atkins'] property right next to the alleyway." Appellant's App. at 40. Atkins carried a jacket, which obstructed Officer DeJong's view of Atkins' hands. Officer DeJong ordered Atkins to kneel on the ground, drop the jacket, and put his hands behind his head. Atkins complied, and Officer DeJong told him that he was going to perform a pat down search for weapons. Atkins informed Officer DeJong that he had a handgun in his beltline. Officer DeJong seized the gun and asked Atkins if he had a permit for the gun, to which Atkins responded that he did not.[1] Subse-

quently, Officer DeJong asked Atkins if he had ever been convicted of a felony. Atkins responded that he had been convicted of voluntary manslaughter. Officer DeJong arrested Atkins, and the State charged him with Unlawful Possession of Firearm by Serious Violent Felon.

Prior to trial, Atkins filed a motion to suppress evidence of the handgun alleging that it was found as the result of an unconstitutional investigatory stop and pat down. The trial court granted Atkins' motion. This interlocutory appeal ensued.

## DISCUSSION AND DECISION

██ In reviewing a motion to suppress, we do not reweigh the evidence but determine if there is substantial evidence of probative value to support the trial court's ruling. *State v. Straub*, 749 N.E.2d 593, 597 (Ind.Ct.App.2001). We look to the totality of the circumstances and consider all uncontroverted evidence together with conflicting evidence that supports the trial court's decision. *Id.* Because the State is appealing a negative judgment, we may reverse only if the evidence is without conflict and leads to the conclusion opposite that reached by the trial court. *State v. Hanley*, 802 N.E.2d 956, 958 (Ind.Ct. App.2004), *trans. denied.*

The State argues that the trial court erred when it granted Atkins' motion to suppress evidence of the handgun because Officer DeJong had reasonable suspicion to conduct an investigatory stop. The State maintains that the investigatory stop complied with the protections afforded by

---

1. Indiana Code Section 35–47–2–1 governs Indiana's license requirement to carry a handgun. It states, in pertinent part: "A person shall not carry a handgun in any vehicle or on or about the person's body, except in the person's dwelling, on the person's property or fixed place of business, without a license issued under this chapter being in the person's possession." Ind.Code § 35–47–2–

1(a). Here, Atkins did not need a permit to carry a handgun because he was on his own property. Accordingly, because Officer DeJong knew that Atkins lived at 192 North Sixth Street, Atkins' possession of a handgun while on his own property did not provide Officer DeJong with reasonable suspicion to justify an investigatory stop.

the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. We address each contention in turn.

### Fourth Amendment

■ The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" by the Government, and its safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Moultry v. State*, 808 N.E.2d 168, 170 (Ind. Ct.App.2004) (citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). However, a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity "may be afoot." *Id.* at 170–71 (citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ Reasonable suspicion is a "somewhat abstract" concept, not readily reduced to "a neat set of legal rules." *Id.* at 171 (citing *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744). When making a reasonable suspicion determination, reviewing courts examine the "totality of the circumstances" of the case to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* (citing *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744). The reasonable suspicion requirement is met where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. *Id.* We review the trial court's ultimate determination regarding reasonable suspicion de novo. *Id.* (citing *Arvizu*,

534 U.S. at 275, 122 S.Ct. 744; *Williams v. State*, 745 N.E.2d 241, 244 (Ind.Ct.App. 2001)).

■■ Initially, we note that the reasonable suspicion analysis first articulated in *Terry* does not apply to this case. As the United States Supreme Court explained in *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the *Terry* stop and frisk rule applies to cases involving a brief encounter between a citizen and a police officer on a public street. Here, there was not an on-street encounter. Atkins was on his own property, in a place where he had a right to be. Therefore, the trial court properly suppressed evidence of the handgun because, absent probable cause, Officer De-Jong had no right to encounter and stop Atkins on his own property. Indeed, here there was no reasonable suspicion to justify the stop, much less probable cause. Nonetheless, the parties argue the investigatory stop issue as if *Terry* applied. Consequently, we address their arguments under the *Terry* standard.

The State asserts that the totality of the circumstances gave Officer DeJong reason to be concerned for his "immediate safety," thereby justifying the investigatory stop. Appellant's Brief at 7. According to the State, the investigatory stop of Atkins was "reasonable and minimally intrusive and served to protect the officer, [Atkins], and anyone else nearby." *Id.* We cannot agree.

The State contends that "[t]he uncertain nature of the 'domestic disturbance' call, along with the fact that the officer had no back up, gave [Officer DeJong] reason to be concerned for his safety. At that precise moment, [Officer DeJong] did not know if [Atkins] was or had been violent or if he intended to challenge the solitary officer in some way." *Id.* at 9. Further, the State directs us to evidence that Offi-

cer DeJong heard a rear door slam and that Atkins carried a jacket over his hands as he walked towards Officer DeJong. But these facts, individually or collectively, do not provide Officer DeJong with the reasonable suspicion required to conduct a valid investigatory stop.

Indeed, the uncontroverted evidence indicates that Atkins did not attempt to flee or even turn away from Officer DeJong when he saw him. Rather, he continued to walk in Officer DeJong's direction. Officer DeJong told Atkins to drop his jacket, which he did without hesitation. After Atkins had discarded the jacket, his empty hands were visible. Officer DeJong then ordered him to kneel, and told him to put his hands behind his head. Atkins was compliant at all times. Moreover, Officer DeJong recognized that there was a "good possibility" that Atkins was the party who had complained or reported the disturbance call. Appellant's App. at 42.

 The State emphasizes officer safety as grounds to support the detention of Atkins. Officer safety is always a legitimate concern, but standing alone officer safety cannot form the basis for a valid investigatory stop. *See Webb v. State*, 714 N.E.2d 787, 788 (Ind.Ct.App.1999) (reasonable suspicion not established when defendant who turned away from officer and placed his hands down the front of his pants was subjected to search for officer safety); *Terry*, 392 U.S. at 32–33, 88 S.Ct. 1868 (Harlan, J., concurring) ("[I]f the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a forcible stop. Any person, including a policeman, is at liberty to avoid a person he considers dangerous."); *United States v. Burton*, 228 F.3d 524, 528 (4th Cir.2000) ("Before [officer] was entitled to allay his safety concerns and conduct a protective search, he had to be presented with objec-

tive facts that would justify an investigatory Terry stop—a reasonable suspicion that a crime had been committed or that criminal activity was taking place."). In sum, a lawful stop, based on objective facts and reasonable suspicion, is the predicate for a pat down.

Again, to stop an individual for investigatory purposes, the officer must first have reasonable suspicion supported by articulable facts that criminal activity "may be afoot." *Terry*, 392 U.S. at 30, 88 S.Ct. 1868. While we do not doubt that Officer DeJong was concerned for his safety, that concern, standing alone, does not satisfy the reasonable suspicion requirement first outlined in *Terry*. That requirement is met where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. *Moultry*, 808 N.E.2d at 170.

 In support of his decision to stop Atkins, Officer DeJong stated, "He just made me nervous. I can't tell you what it is. It's just an instinct that I have." Appellant's App. at 58. But it is well settled that reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. *Webb*, 714 N.E.2d at 788 (citing *Terry*, 392 U.S. at 27, 88 S.Ct. 1868). Reasonable suspicion entails some minimum level of objective justification for making a stop. *Reeves v. State*, 666 N.E.2d 933, 936 (Ind.Ct.App.1996). Without more, Officer DeJong's nervousness and instinct are insufficient to justify an investigatory stop. While the State notes that Officer DeJong heard the rear door slam, could not see Atkins' hands, and everything "happened fast," that evidence does not support a finding that Officer DeJong had reasonable suspicion to conduct an investigatory stop.

This case might have been different if Atkins had fled, engaged in furtive activity, and was uncooperative, or if Officer DeJong had a description of the suspect that was corroborated upon seeing Atkins. But none of those factors were present here. In sum, Officer DeJong knocked on the front door of Atkins' residence. No one answered the front door, but Officer DeJong heard the back door slam. Then, Officer DeJong went to the side of the house where he encountered Atkins as he walked on his property with a jacket in his hands. At no point did Atkins attempt to flee or turn away from Officer DeJong. Indeed, after seeing Officer DeJong, Atkins continued to walk in a normal pace in Officer DeJong's direction. Officer DeJong acknowledged that Atkins could have been the complaining party, and Atkins complied with all of Officer DeJong's commands. Accordingly, based on the totality of the circumstances, we hold that the investigatory stop was not supported by reasonable suspicion that criminal activity was afoot.

### Article I, Section 11

Article I, Section 11 of the Indiana Constitution guarantees the rights of liberty, privacy, and free movement.[2] *Taylor v. State*, 639 N.E.2d 1052, 1054 (Ind.Ct.App.1994). Investigatory stops are intrusions into the privacy of the detained individual and an interference with freedom of movement. *Id.* Such stops constitute a seizure, and invoke the protections of Article I, Section 11 of the Indiana Constitution. *Id.*

An individual's rights to liberty, privacy and free movement under Article 1, Section 11 are not absolute; they must be balanced against society's right to protect itself. *Id.* (citing *Williams v. State*, 261 Ind. 547, 307 N.E.2d 457 (1974)). Courts, thus, must balance the sometimes competing rights. *Id.* (citing *Williams*, 307 N.E.2d at 461). In carrying out this balancing, Indiana courts look to the reasonableness of the intrusion and permit brief investigatory stops based upon reasonable suspicion of criminal activity. *Id.* (citing *Luckett v. State*, 259 Ind. 174, 284 N.E.2d 738, 741–42 (1972)).

A brief police detention of an individual during investigation is reasonable if the officer reasonably suspects that the individual is engaged in, or about to engage in, illegal activity. *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999) (citing *Taylor*, 639 N.E.2d at 1054). Reasonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *Id.* (citing *Taylor*, 639 N.E.2d at 1054).

In *Brown v. State*, 653 N.E.2d 77 (Ind.1995), our supreme court enunciated a separate and distinct method of analysis for claims of search and seizure violations of the state constitution. *Baldwin*, 715 N.E.2d at 337. "Rather than employ federal concepts like the warrant requirement and probable cause requirement, we require instead that the State bear the burden of showing that, in the totality of the circumstances, the intrusion was reasonable." *Id.* A brief police detention of an individual during investigation is reasonable if the officer reasonably suspects that the individual is engaged in, or about

---

**2.** The full text of Article 1, Section 11 consists of the following:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized. Ind. Const. art. I, § 11.

to engage in, illegal activity. *Id.* "Reasonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Id.* (citing *Taylor*, 639 N.E.2d at 1054).

As noted above, the facts are insufficient to provide Officer DeJong with the reasonable suspicion required to support an investigatory stop. The evidence most favorable to the trial court's judgment makes clear that Atkins was on his own property, where he had a right to be, and walked "in a normal pace" in Officer DeJong's direction. Appellant's App. at 41. Further, Officer DeJong stated that it was possible that Atkins was the complaining party. Given our standard of review, we cannot say that the trial court erred as a matter of law when it granted Atkins' motion to suppress.

To reiterate, on appeal from the grant of a motion to suppress, the State appeals from a negative judgment and must show the trial court's ruling on the suppression motion was contrary to law. *State v. Estep*, 753 N.E.2d 22, 24–25 (Ind. Ct.App.2001). We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* at 25. This court neither reweighs the evidence nor judges the credibility of the witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.* Here, the evidence most favorable to the judgment supports the trial court's ruling.

Affirmed.

BARNES, J., and CRONE, J., concur.