**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0808–JV–490.**

Court of Appeals of Indiana.

March 9, 2009.

Transfer Denied May 21, 2009.

Karen Celestino–Horseman, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

J.D., a minor, appeals from a proceeding in which he was adjudicated a juvenile delinquent based on the juvenile court's finding that he committed an act that if committed by an adult would be Resisting Law Enforcement,[1] a class A misdemeanor. On appeal, J.D. presents the sole issue of whether the juvenile court erred in denying his motion to suppress evidence he claims was obtained in violation of article 1, section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution.

We affirm.

The facts favorable to the true finding are that on August 27, 2007, police officers David Kinsey, Jeremiah Casavan, and Brian Burnett were on routine patrol when they saw two juveniles and asked them to stop. The juveniles did not comply, but instead began walking away. The juveniles went to a nearby house, where they joined three other individuals, including J.D. The aforementioned officers approached the house a short time later and recognized the two individuals who had earlier walked away from them. The officers also observed that there were open and empty containers of alcohol on the porch, as well as what they suspected were marijuana leaves on the walkway. J.D. was sitting next to several of the empty and half-empty containers of alcohol. The officers instructed all of the individuals on the porch to walk out to the curb and sit down with their legs straight, and advised that they were going to administer porta-

ble breath tests. Before they could administer the tests, however, J.D. took off running. J.D. was tasered and fell, but he got back up and ran away. Officers Kinsey and Casavan followed and ordered J.D. to stop, but he did not comply. When Officer Kinsey came upon J.D. beside a shed, he ordered J.D. to the ground, but J.D. "came at" him. *Transcript* at 19. The officer shoved J.D. to the ground and Officer Kinsey grabbed him. He tried to handcuff J.D., but J.D. struggled and attempted to elbow the officer, eventually hitting him on the vest he was wearing. J.D. was tasered again, but continued to struggle and kick. After tasering J.D. two more times, Officers Kinsey and Casavan were finally able to subdue and handcuff him. The officers escorted the handcuffed J.D. back to the house where the chase started, and along the way J.D. "was fighting, violently pulling away, kicking, screaming, yelling, and cussing." *Id.* at 20. J.D. eventually calmed down and was placed in a police wagon.

As a result of the foregoing events, J.D. was alleged to have committed acts that would constitute two counts of resisting law enforcement and one count of battery on a police officer, all as class A misdemeanors if they had been committed by an adult. At the fact finding hearing, J.D. on two occasions moved to suppress the evidence related to the stop and anything that ensued, on grounds that the stop was illegal. The court denied the motions and entered a true finding with respect to one allegation of resisting law enforcement.

J.D. contends the juvenile court erred in admitting the testimony about what occurred on the evening in question because it flowed from the seizure of J.D., which he contends was in violation of the Fourth Amendment to the United States Constitu-

---

1. Ind.Code Ann. § 35–44–3–3 (West, PREMISE through 2008 2nd Regular Sess.).

tion and article 1, section 11 of the Indiana Constitution. Our standard of review for the admissibility of evidence is well established. The admission or exclusion of evidence lies within the sound discretion of the trial court and is afforded great deference on appeal. *Whiteside v. State*, 853 N.E.2d 1021 (Ind.Ct.App.2006). We will reverse the trial court's ruling on the admissibility of evidence only for an abuse of discretion. *Id.* An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Id.*

■ We begin with J.D.'s Fourth Amendment claim, which essentially is that the police took J.D. into custody when they directed him to sit on the curb and did so without reasonable suspicion to justify the detention under the Fourth Amendment. The Fourth Amendment protects citizens from unreasonable searches and seizures. Without violating the Fourth Amendment, an officer may briefly stop a person for investigative purposes if the officer has reasonable suspicion of criminal activity. *Williams v. State*, 754 N.E.2d 584 (Ind.Ct. App.2001) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), *trans. denied.* This is a so-called *Terry* stop.[2] Reasonable suspicion exists where

**2.** We acknowledge that there is authority for the proposition that *Terry* does not apply here. In *State v. Atkins*, 834 N.E.2d 1028, 1032 (Ind.Ct.App.2005), *trans. denied*, another panel of this court held:

> Initially, we note that the reasonable suspicion analysis first articulated in *Terry* does not apply to this case. As the United States Supreme Court explained in *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the *Terry* stop and frisk rule applies to cases involving a brief encounter between a citizen and a police officer on a public street. Here, there was not an on-street encounter. Atkins was on his own property, in a place where he had a right to be. Therefore, the trial court properly suppressed evidence of the handgun because, absent probable cause, Officer De-Jong had no right to encounter and stop Atkins on his own property.

From our examination of *Wardlow*, it appears that the "explanation" to which the *Atkins* pan el alluded consists of the following: "This case, involving a brief encounter between a citizen and a police officer on a public street, is governed by the analysis we first applied in *Terry*." *Illinois v. Wardlow*, 528 U.S. at 123, 120 S.Ct. 673. This strikes us as a somewhat less-than-compelling basis for *Atkins's* interpretation of *Wardlow*. In fact, *Wardlow* did not involve or even address the matter of the applicability of *Terry* in places such as a front porch; it simply was not an issue in that case. Thus, we think it a fair reading of this excerpt

of *Wardlow* that the Court was merely summarizing the salient facts of that case for purposes of identifying the appropriate search-and-seizure analysis, almost in boilerplate fashion. We also think it is perhaps reading too literally to cull from this statement the principle that *Terry* applies only under the stated circumstances of that case, i.e., when a "citizen" encounters "police" personnel and the encounter takes place on a "public street." This is not an apt application of the maxim of statutory construction, *expressio unus est exclusion alterius.* For example, we do not believe this sentence of *Wardlow* should be construed to mean that *Terry* does not apply to non-citizens (versus citizens), or in encounters with sheriff's deputies (versus police), or when the encounter takes place on a public sidewalk or in a public parking lot (versus a public *street*), *cf. Illinois v. McArthur*, 531 U.S. 326, 335, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) ("[t]his Court has held, however, that a person standing in the doorway of a house is 'in a "public" place,' and hence subject to arrest without a warrant permitting entry of the home").

Be that as it may, we need not decide whether we agree with this aspect *of Atkins* (adopted by other panels of this court solely on the basis *of Atkins*, see *e.g.*, *Guffey v. State*, 888 N.E.2d 873 (Ind.Ct.App.2008) (memorandum decision); *Abernathy v. State*, 886 N.E.2d 654 (Ind.Ct.App.2008) (memorandum decision); *Malone v. State*, 882 N.E.2d 784 (Ind. Ct.App.2008), because J.D. does not argue

the facts known to the officer, along with the reasonable inferences drawn therefrom, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *Id.* Reasonable suspicion is determined on a case-by-case basis by examining the totality of the circumstances. *Person v. State,* 764 N.E.2d 743 (Ind.Ct.App.2002), *trans. denied.* Reasonable suspicion must be an objective determination that is more than an inchoate and unparticularized suspicion or hunch, but less than proof of wrongdoing by a preponderance of the evidence. *Id.*

■ The requirements of the Fourth Amendment are satisfied if the facts known to the officer at the moment of the stop are such that a person of reasonable caution would believe that the action taken was appropriate. *State v. Dodson,* 733 N.E.2d 968 (Ind.Ct.App.2000). A stop made for investigative purposes must be temporary and last no longer than is necessary to effectuate the purpose. *Id.* A police officer's subjective motives are irrelevant in Fourth Amendment analysis, and a stop will be valid provided there is an objectively justifiable reason for it. *Id.*

In this case, Officers Kinsey, Casavan, and Burnett observed J.D. and other juveniles sitting on a porch with open and empty containers of alcohol sitting around the porch. Moreover, J.D. "was sitting right next to some of the empty cans and some cans that had some alcohol in them." *Transcript* at 13. Although the officers did not witness J.D. actually drinking beer,[3] the fact that he is a minor, coupled with his close proximity to the open cans of beer on the porch, was sufficient to cause

an ordinarily prudent person to believe that criminal activity had or was about to occur. *See Williams v. State,* 754 N.E.2d 584. Thus, considering the totality of the circumstances, *see Greeno v. State,* 861 N.E.2d 1232 (Ind.Ct.App.2007), the facts then known to the officers were sufficient to create a reasonable suspicion of criminal activity, regardless of whether the officers actually saw J.D. drinking the beer or holding the can in his hands. The detention of J.D. thus did not offend Fourth Amendment principles.

■ We reach a similar result when analyzing J.D.'s claim under the Indiana Constitution. The analysis under the Indiana Constitution is much the same as that under the Fourth Amendment. Article 1, section 11 of the Indiana Constitution guarantees the rights of liberty, privacy, and free movement and investigatory stops constitute a seizure, invoking the protections of that provision. *Taylor v. State,* 639 N.E.2d 1052 (Ind.Ct.App.1994). Those rights are not absolute, however, but must be balanced against society's right to protect itself. *State v. Atkins,* 834 N.E.2d 1028. We must balance these sometimes competing rights by considering the reasonableness of the intrusion and, where appropriate, permit brief investigatory stops based upon reasonable suspicion of criminal activity. *Id.*

A brief police detention of an individual during investigation is reasonable if the officer reasonably suspects that the individual is engaged in, or about to engage in, illegal activity. In *Brown v. State,* 653 N.E.2d 77 (Ind.1995), our supreme court enunciated a separate and distinct

that the *Terry* analysis does not apply in this situation; he merely argues that the "reasonable suspicion" element of *Terry* is not satisfied on these facts. Thus, we will apply the *Terry* analysis. *See State v. Atkins,* 834 N.E.2d at 1032 (the court addressed the *Terry* argu-

ment on its merits on the basis that "the parties argue[d] the investigatory stop issue as if *Terry* applied").

3. Office Kinsey testified that the open containers next to J.D. were beer cans.

method of analysis for claims of search and seizure violations of the state constitution. "Rather than employ federal concepts like the warrant requirement and probable cause requirement, we require instead that the State bear the burden of showing that, in the totality of the circumstances, the intrusion was reasonable." [*Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999)]. A brief police detention of an individual during investigation is reasonable if the officer reasonably suspects that the individual is engaged in, or about to engage in, illegal activity. *Id.* "Reasonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Id.*

*State v. Atkins,* 834 N.E.2d at 1034–35.

As explained above with respect to J.D.'s Fourth Amendment claim, the police officers observed J.D. sitting in very close proximity to open beer cans, with what appeared to be marijuana strewn about on the ground. This would cause an ordinarily prudent person to believe that criminal activity (minor consumption of alcohol) had or was about to occur, thus giving rise to the requisite reasonable suspicion under *Terry.* J.D.'s detention did not contravene article 1, section 11 of the Indiana Constitution and the juvenile court did not err in failing to exclude the evidence on that basis.

Judgment affirmed.

MAY, J., and BRADFORD, J., concur.