Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Oct 16 2014, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**EVAN B. BRODERICK**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
**JUSTIN F. ROEBEL**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARQUISE McCLOUD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1312-CR-1056 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C04-1302-FA-428

**October 16, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Marquise McCloud ("McCloud") was convicted in Madison Circuit Court of possession of more than three grams of cocaine within 1,000 feet of a family housing complex, a Class A felony. The trial court sentenced McCloud to thirty-three years executed in the DOC, two years in community corrections, and five years suspended to probation. McCloud appeals and presents two issues, which we restate as:

I.  Whether the admission of evidence seized during a pat-down search of McCloud amounted to fundamental error; and

II. Whether the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

**Facts and Procedural History**

On February 25, 2013, officers Chris Frazier ("Officer Frazier") and Chad Boynton ("Officer Boynton") of the Anderson Police Department were in a patrol car looking for a man, Antwon Smoot ("Smoot"), for whom they had an arrest warrant. The officers decided to go to an apartment complex in Anderson that Smoot had been known to frequent. The apartment complex was known for its high drug activity, and across the street from the complex, police saw three men in a driveway standing next to a car. The police approached the men to see if they knew Smoot and his whereabouts.

As the officers approached, one of the men, McCloud, recognized Officer Frazier, and stated aloud, "Damn, Frazier." Tr. p. 235. Officer Frazier likewise recognized McCloud as the man he had arrested three days earlier after McCloud had hidden marijuana and a handgun in the attic of a house. McCloud began to act "erratic" and "paranoid," and ducked behind a car in the driveway and began to attempt to pull

2

something out of his coat pocket before ducking below the car and momentarily out of sight. Id. McCloud peeked over the top of the trunk of the car to see where Officer Frazier was as he dug around in his pocket. Concerned that McCloud might be armed, Officer Frazier drew his weapon and ordered McCloud to show his hands. McCloud initially refused to comply, but eventually raised his hands. Officer Frazier then performed a pat-down on McCloud and felt a large, hard object in McCloud's front coat pocket, which he believed might be a knife because it appeared to be sharp at one end. Upon emptying the contents of McCloud's pockets, Officer Frazier found a mobile phone, a wallet, keys, and a plastic bag containing 7.7 grams of cocaine. McCloud then told Officer Frazier that he had been "doing his work out there," and had stolen the cocaine from someone else. Tr. p. 410.

The State charged McCloud the following day with Class A felony dealing in cocaine and Class A felony possession of more cocaine within 1,000 feet of a family housing complex. The trial court denied McCloud's motion to suppress the evidence found in the pat-down search, and this evidence was admitted into evidence at trial without objection. The jury found McCloud not guilty of dealing in cocaine but guilty of possession of cocaine. The trial court sentenced McCloud to forty years, with thirty-three years executed, two years on work release in community corrections, and three years probation. McCloud now appeals.[1]

---

[1] We held oral argument in this case on September 26, 2014 at Wayne High School in Fort Wayne, Indiana. We extend our gratitude to the faculty, staff, and students of Wayne High School for their hospitality, and we commend counsel for the quality of their written and oral advocacy.

## I. Fundamental Error in the Admission of Evidence

McCloud first challenges the admission of the cocaine seized during the pat-down search. Generally speaking, questions regarding the admission of evidence are within the discretion of the trial court. Boatner v. State, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010). The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Id. Although McCloud filed a motion to suppress the evidence seized during the pat-down search, this is insufficient to preserve the issue for purposes of appeal. See Dawson v. State, 786 N.E.2d 742, 744 (Ind. Ct. App. 2003) ("The denial of a motion to suppress in and of itself is insufficient to preserve error for appeal."). Instead, the defendant must make a timely objection to the admission of the evidence at trial. See id. ("In order for this court to review the denial of a motion to suppress, the error must be preserved by a specific and timely objection to the evidence at trial.").

Here, McCloud admits that he did not preserve the issue for appeal by making an objection at trial. But McCloud attempts to circumvent his failure to preserve this issue by arguing that the admission of the evidence amounted to fundamental error. Our supreme court has explained the fundamental error exception as follows:

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. This exception is available only in egregious circumstances.

4

> This doctrine has been applied, for example, to review a conviction without proof of an element of the crime despite the lack of objection. *But an error in ruling on a motion to exclude improperly seized evidence is not* per se *fundamental error.   Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt.*

Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (citations and internal quotations omitted) (emphasis added).

McCloud argues that the admission of the cocaine into evidence was fundamental because it was allegedly obtained in violation of the Fourth Amendment to the United States Constitution.[2]  Specifically, he claims that the police did not have a reasonable suspicion to justify the pat-down search.

Of course, McCloud is correct that the Fourth Amendment prohibits unreasonable searches and seizures by the government, and searches performed by government officials without warrants are *per se* unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions.  Patterson v. State, 958 N.E.2d 478, 482-83 (Ind. Ct. App. 2011) (citing Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006); Katz v. United States, 389 U.S. 347, 357 (1967)).  When a search is

---

[2]  McCloud references Article 1, Section 11 of the Indiana Constitution but provides no separate analysis under the Indiana Constitution.  And we have held before that, regarding questions of reasonable suspicion, "[t]he analysis under the Indiana Constitution is much the same as that under the Fourth Amendment."  J.D. v. State, 902 N.E.2d 293, 296 (Ind. Ct. App. 2009); see also State v. Ritter, 801 N.E.2d 689, 691 (Ind. Ct. App. 2004) (noting that under both the Fourth Amendment and Article 1, Section 11, the question to be decided is whether the police had a reasonable suspicion to stop the suspect).

conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search. Id.

One such exception was established in Terry v. Ohio, 392 U.S. 1, 30 (1968), in which the United States Supreme Court held that a police officer may briefly detain a person for investigatory purposes if, based on specific and articulable facts, together with reasonable inferences drawn therefrom, an ordinarily prudent person would reasonably suspect that criminal activity was afoot. Such reasonable suspicion is determined on a case-by-case basis by examining the totality of the circumstances. Id. In addition to a brief detainment, Terry permits a police officer to conduct a limited search of the suspect's outer clothing for weapons if the officer reasonably believes that the individual is armed and dangerous. Id. at 482-83. An officer's authority to perform such a pat-down search of a detained individual during a Terry stop depends on the nature and extent of the officer's particularized concern for his or her safety. Id.

McCloud argues that Officer Frazier did not have a reasonable suspicion to either stop him or frisk him for weapons. In support of his position, McCloud cites Carter v. State, 692 N.E.2d 464 (Ind. Ct. App. 1997), a case in which this court held that the police did not have a reasonable suspicion to stop the suspect and perform a pat-down search. Id. at 467. The facts in Carter were as follows:

> Officer Gary Morrolf entered an Arby's restaurant with other members of the North District Vice Narcotic Squad. All of the officers were dressed in plain clothes. As Morrolf entered the restaurant, he observed four individuals standing in line and recognized one of them as Carter, a person known to him to have had a prior cocaine conviction. Morrolf observed Carter turn toward his direction as the crowd of people entered the restaurant and then turn back toward the counter. Carter subsequently

6

placed his right hand in his coat pocket. Seconds later, Carter turned and walked with "long steps" toward the door Morrolf had entered. In doing so, he bumped into Morrolf's partner and exited the restaurant.

Morrolf followed Carter outside and observed him walk toward a car. As Carter reached the car, Morrolf came up behind Carter, reached around and patted the right pocket of Carter's coat. Morrolf felt what he believed to be a gun. Morrolf then pulled Carter's hand from the coat pocket and retrieved the gun. Morrolf then placed Carter under arrest.

Id. at 465 (record citation omitted). In rejecting the State's argument that these circumstances supported the officer's pat-down search, we noted that standing in line at a restaurant and turning around and walking out are not suspicious. Id. at 467. Nor did we accept the officer's claim that he was suspicious that Carter might be armed because he had his hand in his pocket and had a criminal record. See id. ("[The officer]'s mere knowledge of Carter and his prior criminal record was not sufficient to justify the investigatory stop."). Thus, in Carter, the officer's knowledge of Carter was the sole basis and foundation for his suspicions, and this was insufficient.

Here, however, not only did Officer Frazier know of McCloud's criminal record, he had arrested McCloud after McCloud had hidden a firearm only three days earlier. And McCloud did not simply walk away from the police as did the defendant in Carter. Instead, he quickly ducked behind a car in an obvious effort to hide while he attempted to empty his pockets. Indeed, unlike Carter, who simply had his hand in his pocket, here McCloud was attempting to pull something out of his pocket.

McCloud next cites Hill v. State, 956 N.E.2d 174 (Ind. Ct. App. 2011), in support of his argument. However, Hill is also distinguishable from the present case. In Hill, an Officer Gaskill had received a dispatch stating that a light-skinned African-American had

7

fled the scene of a traffic stop on foot. The officer went to an area provided by the dispatch and observed Hill walking at a fast pace. The officer stopped his car, exited, and approached Hill and told him to walk toward him. Hill did so, but reached into his pants' pocket. The officer told Hill to remove his hand from his pocket, and Hill did so. The officer thought that Hill's body language indicated that he was about to flee, and Hill gave inconsistent statements about where he was going and where he was coming from. The officer then conducted a pat-down search of Hill and discovered a small amount of marijuana. A handgun was later found in the back seat of the police car that had been used to transport Hill to the jail.

On appeal, we held that the totality of the circumstances did not support a finding of reasonable suspicion:

> First, none of the information relating to the suspect who fled from the traffic stop indicated that he was armed or dangerous. Second, while Officer Gaskill testified that he "do[esn't] like" it when a suspect puts his hand in his pocket, like Hill did, Hill complied when Officer Gaskill told him to remove his hand from the pocket. And when asked whether he had "some concern about whether [Hill] would have a weapon" in his pocket, Officer Gaskill replied only that he is generally "concerned about people with weapons."
>
> Finally, Officer Gaskill testified on redirect examination that his "motive" for the pat-down search was his "own safety" given the one instance of the hand in the pocket and the fact that Hill was "looking around and cocking his body, et[ ]cetera." But, again, Hill put his hand in his pocket one time and complied when Officer Gaskill instructed him to remove it. And, as for the "looking around and cocking his body," Officer Gaskill had described those actions as indicative of Hill's apparent desire to flee. In fact, while Officer Gaskill seemed very concerned that Hill looked like he was going to flee, he did not testify to facts that would support a reasonable, objective belief that Hill was armed and dangerous. Officer Gaskill made no connection between the likelihood that Hill would flee with any likelihood that he would be armed and dangerous.

8

Id. at 178 (record citations omitted).

In contrast, here Officer Frazier had arrested McCloud only three days prior for an incident that involved a firearm. And McCloud attempted to hide from the police upon seeing them by ducking behind a car, and began to quickly attempt to remove something from his pocket. And unlike the defendant in Hill, McCloud did not immediately remove his hands from his pockets when told to do so.

McCloud also cites State v. Atkins, 834 N.E.2d 1028, 1033 (Ind. Ct. App. 2005), in which a police officer had been dispatched to a house on a domestic disturbance call. No one answered the front door, but the officer heard the rear door slam and went to the back of the house. There, he saw the defendant carrying a jacket. The officer immediately ordered Atkins to stop, get on his knees, and put his hands behind his head. Atkins did so, and the officer performed a pat-down search, revealing a handgun for which Atkins did not have a permit. In fact, Atkins had previously been convicted of voluntary manslaughter and was therefore charged with possession of a firearm by a serious violent felon.

On interlocutory appeal from the trial court's denial of Atkins's motion to suppress, we held that the officer did not have a reasonable suspicion to support the pat-down of Atkins. Id. at 1032-33. We noted that Atkins did not flee or even turn away from the officer and immediately complied officer's orders to drop his jacket, after which his empty hands were visible. Indeed, Atkins was compliant at all times. Nor was the officer's concern for his safety justified by reasonable, articulable facts. Instead, the

officer said Atkins made him nervous for an unknown reason, which he described as an "instinct." Id. at 1033. But this was merely the sort of general "hunch" or un-particularized suspicion that is insufficient under Terry. See id. (citing Terry, 392 U.S. at 27). We also noted that "[t]his case might have been different if Atkins had fled, engaged in furtive activity, and was uncooperative, or if [the officer] had a description of the suspect that was corroborated upon seeing Atkins." Id. at 1034. Here, however, McCloud *did* engage in furtive activity by ducking behind the car and attempting to remove something from his pocket. And he did not immediately respond to the police orders to remove his hands from his pocket. Therefore, Atkins is unavailing to McCloud.

Lastly, McCloud cites Stalling v. State, 713 N.E.2d 922, 924 (Ind. Ct. App. 1999), for the proposition that mere knowledge of a defendant and his prior criminal activities is insufficient to support an investigatory stop. Be that as it may, here, it is clear that Officer Frazier's search of McCloud was not based merely on his knowledge of McCloud and his prior criminal activities, but was also based on McCloud's behavior upon being approached by the police.[3]

We agree with the State that this case is more akin to Williams v. State, 754 N.E.2d 584 (Ind. Ct. App. 2001). In that case, the suspect was pulled over during a traffic stop and avoided eye contact with the officer, was unusually nervous and sweaty,

---

[3] At oral argument, McCloud's counsel cited Greeno v. State, 861 N.E.2d 1232, 1237-38 (Ind. Ct. App. 2007), but the facts of the present case are distinguishable from Greeno. In that case, the police officer began to chase and seize the defendant for purposes of the Fourth Amendment without any reasonable suspicion. Here, however, the officers did not draw their weapons and order McCloud to remove his hands until *after* he had ducked behind the car and attempted to quickly remove something from his pocket.

and kept putting his hands into his pockets despite being told to remove his hands from his pockets. Id. at 588. This court held on appeal that such behavior warranted the officer's reasonable fear for his safety and thus held that the pat-down search was permissible. Id.; see also State v. Joe, 693 N.E.2d 573, 574-75 (Ind. Ct. App. 1998) (holding that police acted reasonably when searching a suspect who was suspiciously moving his hands around the center console of the car and reluctantly raised his hands only after the officer drew his gun).

Here, police approached a group of men that included McCloud. Although the police had no reasonable suspicion to stop McCloud or his companions at that time, the officers were simply attempting to see if any of the men had seen the subject of an arrest warrant, who was known to frequent the apartment complex across the street. McCloud did not merely walk away from the police, or indicate that he did not wish to speak to the police. Instead, he stated, "Damn, Frazier" upon seeing Officer Frazier, and quickly ducked behind a car and attempted to remove something from his jacket pocket.

Contrary to McCloud's claims, we believe that McCloud's behavior, combined with Officer Frazier's recent experience with McCloud, was sufficient to support a reasonable suspicion based on articulable facts that Frazier might be armed. Therefore, Officer Frazier's Terry stop of McCloud was entirely proper. And even if we were to conclude otherwise, this case presents, at most, a close call. In such situations, we defer to the trial court's discretion. See Brown, 929 N.E.2d at 207 (noting that evidentiary error is rarely fundamental error that denies the accused of due process). In short, the trial

11

court did not commit fundamental error in the admission of the evidence found during the pat-down search of McCloud.

## II. Sentencing

McCloud next argues that the sentence imposed by the trial court is inappropriate.[4] Even if a trial court acted within its statutory discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. Trainor v. State, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), trans. denied (citing Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007)). This authority is implemented through Indiana Appellate Rule 7(B), which provides that the court on appeal "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Id.

Still, we must and should exercise deference to a trial court's sentencing decision, because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Although we have the power to review and revise sentences, the principal role of our review should be to attempt to level the outliers, and identify some guiding

---

[4] McCloud claims in passing that the trial court abused its discretion in sentencing him, but he makes no separate argument regarding an abuse of discretion and instead focuses his analysis solely on Appellate Rule 7(B). Moreover, even if the trial court did abuse its discretion in sentencing, we need not remand to the trial court for resentencing if the sentencing is not inappropriate. See Brock v. State, 983 N.E.2d 636, 640 (Ind. Ct. App. 2013) ("if we conclude that the trial court has abused its discretion in sentencing, we need not remand for resentencing if the sentence imposed is not inappropriate.") (citing Chappell v. State, 966 N.E.2d 124, 134 n.10 (Ind. Ct. App. 2012)); see also Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (noting that when trial court errs in sentencing defendant, court on appeal may exercise authority to review and revise sentence instead of remanding for resentencing).

principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. Fernbach v. State, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), trans. denied (citing Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008)). The appropriate question is not whether another sentence is more appropriate; instead, the question is whether the sentence imposed is inappropriate. Former v. State, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). And it is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Here, McCloud was convicted of Class A felony possession of cocaine within 1,000 feet of a family housing complex. See Ind. Code § 35-48-4-6(b)(3)(B)(iii).[5] The sentencing range for a Class A felony is twenty to fifty years, with thirty being the advisory sentence. See Ind. Code § 35-50-2-4. The total sentence imposed by the trial court was forty years, which is ten years greater than the advisory, but also ten years less than the maximum sentence. And the trial court ordered McCloud to serve thirty-five years of the sentence in the DOC, with the remainder to be served on community corrections and probation. When reviewing the appropriateness of a sentence, we are not "to consider only the appropriateness of the aggregate length of the sentence without considering also whether a portion of the sentence is ordered suspended." Davidson v.

---

[5] Possession of cocaine is generally a Class D felony. I.C. § 35-48-4-6(a). It is elevated to a Class C felony if the amount of cocaine exceeds 3 grams. I.C. § 35-48-4-6(b)(1). It is elevated to a Class B felony if the possession occurs within 1,000 feet of a school, public park, family housing complex, or youth program center. I.C. § 35-48-4-6(b)(2). It is elevated to a Class A felony if it the amount of cocaine exceeds 3 grams and the possession occurs with in 1,000 feet of these areas. I.C. § 35-48-4-6(b)(3).

State, 926 N.E.2d 1023, 1024. (Ind. 2010). And "[t]his does not preclude a reviewing court from determining a sentence to be inappropriate due to its overall sentence length despite the suspension of a substantial portion thereof. A defendant on probation is subject to the revocation of probation and may be required to serve up to the full original sentence." Id.

McCloud tries to minimize the nature of his offense, claiming that he was near the family housing complex only briefly and did not possess a significant amount of cocaine. The latter of these arguments is not particularly persuasive. McCloud was found in possession of 7.77 grams of cocaine. McCloud now claims that this is "only" 4.77 grams more than the three-gram threshold required to elevate his conviction. See I.C. § 35-48-4-6(b)(3). Although 7.77 grams is not an extraordinary weight,[6] it is over *twice* the threshold of three grams.

In support of his claim that he was only briefly near the family housing complex, McCloud cites Abbott v. State, 961 N.E.2d 1016 (Ind. 2012). In that case, the defendant had been observed by a police officer conducting what appeared to be an illegal drug transaction. After following the defendant's car for several blocks, the officer pulled the defendant over in an area near a school. The officer found 1.15 grams of cocaine and 5.17 grams of marijuana on Abbott. As a result, Abbott was changed with Class B felony possession of cocaine within 1,000 feet of a school.

---

[6] 7.77 grams is equal to 0.274 ounces.

Because of where he was pulled over, the defendant was charged with and convicted of Class B felony possession of cocaine and sentenced to the maximum sentence of twenty years. This court affirmed,[7] and our supreme court granted transfer. Our supreme court noted it is a defense for a person charged under the possession of cocaine statute "where the person was 'in, on, or within one thousand (1000) feet of school property . . . at the request or suggestion of a law enforcement officer or an agent of a law enforcement officer.'" Abbott, 961 N.E.2d at 1017 (citing Ind. Code § 35-48-4-16(c)).[8] It is also a defense that the defendant was only "briefly in, on, or within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center." I.C. § 35-48-4-16(b)(1). Even though Abbott did not present this statutory defense at trial, our supreme court held that "the circumstances resulting in the enhancement of Abbott's offense from a Class D felony to a Class B felony weigh heavily in assessing the appropriateness of the sentence imposed." Abbott, 961 N.E.2d at 1018. The court concluded:

> We emphasize . . . that Abbott's offense was enhanced from a Class D felony—which has an advisory sentence of one and a half years, see I.C. § 35-50-2-7—to a Class B felony because he was "in, on, or within one

---

[7] See Abbott v. State, 950 N.E.2d 357 (Ind. Ct. App. 2011), trans. granted, summarily aff'd in part, rev'd in part.

[8] As further explained by the Abbott court:

> This is not an affirmative defense, but rather a mitigating factor that reduces culpability, and therefore the defendant does not have the burden of proof but only the burden of placing the issue in question where the State's evidence has not done so. Once at issue, the burden passes to the State to disprove beyond a reasonable doubt that the defendant was within 1,000 feet of school property at the request or suggestion of a law enforcement officer or an agent of a law enforcement officer.

Id. at 1018 (citations and internal quotations omitted).

thousand feet (1000) of . . . school property." I.C. § 35-48-4-6(b)(2)(B)(i). However, but for the police officer's choice of location in stopping the car in which Abbott was a passenger, he would have received no more than the maximum three-year sentence for his possession of less than three grams of cocaine. These circumstances compel us to conclude that although Abbott's character does not necessarily justify a revision of his sentence, the nature of Abbott's offense in this case renders his twenty-year maximum sentence inappropriate.

Id. at 1019. The court therefore revised Abbott's sentence to twelve years.

The present case is readily distinguishable from Abbott. First, McCloud was not sentenced to the statutory maximum sentence like the defendant in Abbott. Also, in Abbott, the fact that the defendant did not present a defense based on Indiana Code section 35-48-4-16 appears to have been a very important portion of the court's analysis. See Abbott, 961 N.E.2d at 1018 ("[N]ot once during closing argument did Abbott mention the statutory mitigating factor under Indiana Code section 35-48-4-16(c); and Abbott did not request and the trial court did not give a jury instruction on the matter. Indeed even on appeal Abbott makes no argument concerning Indiana Code section 35-48-4-16(c)."). Here, McCloud *did* present a defense based on Indiana Code section 35-48-4-16, which the jury obviously rejected.

Moreover, the officers here approached McCloud and his companions when they were standing near a car in a driveway across the street from the apartment complex. Unlike the case in Abbott, it was not the action of the police officer(s) that caused McCloud to be within 1,000 feet of the family housing complex; instead, McCloud was already within 1,000 feet of the family housing complex when the police approached him.

16

McCloud also claims that he was only "briefly" within 1,000 feet of the family housing complex. However, McCloud has a rather broad definition of briefly, as the evidence indicates that he was at the location for approximately twenty minutes. And McCloud told the arresting officers that he had been "doing his work out there," thereby inferring that he had stolen the cocaine from someone in the area, an endeavor that is more than a brief appearance for purposes of a defense under Abbott. This is not a situation where McCloud was merely passing through an area within 1,000 feet of a family housing complex; he was there of his own volition and for approximately twenty minutes before the police arrived. Under these facts and circumstances, it does not appear that Abbott or the defenses afforded a defendant under 35-48-4-16 provide much support for McCloud's argument that his sentence is inappropriate.

Turning to a consideration of the nature of McCloud's offense, it is true that McCloud possessed a small amount of cocaine in absolute terms. See note 4, supra. However, this small amount was still over twice the statutory threshold required to elevate McCloud's offense. And the cocaine found on McCloud was divided into thirty-five or thirty-six individual doses. Even though McCloud was acquitted of dealing in cocaine, it is appears that the cocaine he possessed was prepared for distribution. McCloud was also extremely close to the family housing complex—a mere eighty-three feet. And there were children present at the time he was arrested.

Furthermore, McCloud's criminal record does not speak well for his character. McCloud, who was thirty-three at the time of sentencing, had a history of criminal behavior and juvenile delinquency that started when he was only eleven years old.

Indeed, McCloud was adjudicated a delinquent four times as a juvenile. And his behavior did not improve with age. At the time of sentencing, McCloud had been convicted fourteen times, including six felony convictions. His felony convictions include carrying a handgun without a license, battery resulting in bodily injury on a law enforcement officer, and possession of cocaine. There were also four additional charges pending against McCloud at the time of sentencing. Under these facts and circumstances, we cannot say that McCloud's sentence of forty years, with thirty-three years executed, two years in community corrections, and five years suspended, is inappropriate.[9]

## Conclusion

The trial court did not commit fundamental error in the admission of the cocaine found during the pat-down search of McCloud, and McCloud's forty-year sentence, with thirty-three years executed, two years in community corrections, and five years suspended, is not inappropriate in light of the nature of McCloud's offense and his character.

Affirmed.

RILEY, J., and CRONE, J., concur.

---

[9] At oral argument, McCloud's counsel also argued that, in determining the appropriateness of McCloud's sentences, we should consider the new criminal code, effective July 1, 2014, which in certain cases has notably decreased the sentences for drug offenses. We recently rejected this argument in Marley v. State, ___ N.E.3d ___, 2014 WL 4472750 (Ind. Ct. App. Sept. 11, 2014), and we see no reason to reconsider our holding in Marley.